STATE of Alaska, Petitioner,

v.

John T. CARLIN III, Respondent.

Jimmie Dale, Petitioner,

v.

State of Alaska, Respondent.

Nos. S–13385, S–13573.

Supreme Court of Alaska.

March 25, 2011.

process requirement for orders afforded § 1911(d) full faith and credit).

Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for State of Alaska.

Marjorie Allard, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, as amicus curiae and previous counsel for Respondent Carlin.

Christine S. Schleuss, Law Office of Christine Schleuss, Anchorage, for Petitioner Dale.

Allen M. Bailey, Law Offices of Allen M. Bailey, Anchorage, for Amici Curiae National Crime Victim Law Institute and Alaska Office of Victims' Rights.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

### OPINION

FABE, Justice.

## I. INTRODUCTION

We consolidated these two cases to resolve the following question: What is the effect of the death of a criminal defendant while an appeal is pending? John Carlin III was convicted of first-degree murder. He appealed his conviction to the court of appeals and died before the opening brief was filed. Jimmie Dale was convicted of several crimes arising out of a drunk driving incident. He appealed to the court of appeals, which affirmed his conviction. He then filed a petition for hearing before this court, and we granted the petition. But after filing his opening brief, Dale died. In each case, the defendant's attorney filed a motion to dismiss the appeal and vacate the conviction pursuant to the rule of abatement we adopted in *Hartwell v. State*.[1]

Because of changed conditions, including increased recognition of the rights of crime victims and rejection of abatement by some state courts, we now overrule *Hartwell*. We hold that when a criminal defendant dies after filing an appeal, or a petition for hearing which has been granted, the defendant's conviction will stand unless the defendant's personal representative elects to continue the appeal.

## II. FACTS AND PROCEEDINGS

### A. *State v. Carlin*

In September 2006 John Carlin III was indicted on a charge of first-degree murder for killing Kent Leppink a decade earlier. A jury found Carlin guilty, and the trial court sentenced Carlin to serve 99 years in prison. In a separate trial following his conviction, Carlin's co-defendant, Mechele Linehan, was also convicted of first-degree murder on the theory that she aided and abetted Carlin.[2]

---

1. 423 P.2d 282, 284 (Alaska 1967) (holding that the death of a criminal defendant while a conviction is on appeal will permanently abate all criminal proceedings and nullify the defendant's conviction).

2. *But see Linehan v. State*, 224 P.3d 126, 130, 150 (Alaska App.2010) (reversing Linehan's conviction and concluding that Linehan is entitled to a new trial).

Carlin appealed his conviction, arguing that the superior court should not have admitted certain hearsay statements made by Leppink and Linehan at his trial. Among the evidence admitted by the court was a letter written by Leppink shortly before his death in which he stated that if he died under mysterious circumstances, Linehan and either Carlin or another of Linehan's boyfriends would probably be the ones responsible.

On October 27, 2008, before the opening brief in his appeal was filed, Carlin was murdered in prison. Carlin's appellate attorney from the Alaska Public Defender Agency moved to dismiss the appeal and vacate Carlin's criminal conviction under the doctrine of abatement *ab initio* that we adopted in *Hartwell v. State*.[3] The State opposed the motion, arguing in the alternative that (1) *Hartwell* should not apply because the abatement of Carlin's conviction could have collateral consequences for a retrial of Linehan should she be successful in appealing her conviction for aiding and abetting Carlin; or (2) the doctrine of abatement announced in *Hartwell* should be abandoned. The court of appeals rejected the State's arguments and granted the motion to dismiss the appeal and abate Carlin's conviction.

The State petitioned for a hearing, requesting that we revisit our ruling in *Hartwell*. We granted the petition and permitted the Public Defender Agency to file an amicus brief in light of its expressed concern about the propriety of continuing its representation after Carlin's death. We also invited the Office of Victims' Rights to participate as amicus curiae. After the State filed its opening brief, but before any responsive brief was filed, the court of appeals reversed Linehan's conviction, holding that it was error to admit

Leppink's accusatory letter "from the grave."[4]

## B. *Dale v. State*

On October 4, 2005, Jimmie Dale drove his truck off the road and down a 100–foot embankment, seriously injuring his two female passengers.[5] A sergeant of the Alaska State Troopers, who responded to the scene, learned that Dale had left on foot. The sergeant located Dale a short distance away and believed that Dale had been drinking.[6] Dale was taken to a hospital along with his passengers,[7] and there a trooper directed the staff to take a blood sample from Dale without first obtaining a warrant. The test, taken more than three hours after the accident, revealed a blood-alcohol content between 0.07 and 0.08.[8]

Dale was charged with driving under the influence, driving with a suspended license, two counts of assault in the first degree, two counts of assault in the third degree, and failure to remain at the scene and render assistance after an accident causing injury. Dale moved to suppress the results of the blood test on Fourth Amendment grounds,[9] arguing that the warrantless blood draw was not supported by exigent circumstances. The superior court denied Dale's motion, and a jury convicted him of all charges.[10] He was sentenced to 23 years and 40 days in prison. The court of appeals affirmed.[11]

Dale then filed a petition for hearing, raising the issue of whether exigent circumstances always exist in DUI cases. We granted the petition and set a briefing schedule. After Dale filed his opening brief, but before the State filed its opposition, Dale died in prison. The State moved to dismiss the appeal, leaving intact the decision by the court of appeals. Dale's counsel requested

---

3. 423 P.2d at 284. "Abatement" is defined as "[t]he act of eliminating or nullifying" or "[t]he suspension or defeat of a pending action for a reason unrelated to the merits of the claim." BLACK'S LAW DICTIONARY 3 (9th ed.2009).

4. *Linehan*, 224 P.3d at 130–43, 150.

5. *Dale v. State*, 209 P.3d 1038, 1039 (Alaska App.2009).

6. *Id.*

7. *Id.*

8. *Id.* at 1039, 1040.

9. *Id.* at 1040.

10. *Id.*

11. *Id.* at 1044.

that the appeal continue unless Dale's conviction was abated. We stayed further briefing on the merits of Dale's petition and ordered full briefing on the "abatement issue presented by Dale's death," inviting the National Crime Victim Law Institute and the Alaska Public Defender Agency to submit amicus briefs. In addition, we consolidated the matter with *State v. Carlin* for argument, consideration, and decision.

## III. STANDARD OF REVIEW

In *State v. Carlin*, the State challenges the decision by the court of appeals to dismiss Carlin's appeal and abate his criminal prosecution under the common law doctrine of abatement. We apply our independent judgment to questions of law, such as the formulation and scope of common law rules.[12] In *Dale v. State*, the issue of abatement was first raised in a motion before this court, so there is no decision by a lower court to review. We will overturn one of our prior decisions only when we are "clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent."[13]

## IV. DISCUSSION

### A. *Hartwell v. State*[14]

In 1967 we addressed the following question: "[W]hat effect does the death of the appellant, pending disposition of his appeal from a criminal conviction, have on the proceedings."[15] Robert Hartwell was found guilty by a jury of the crime of incest and sentenced to seven years in prison with five years suspended.[16] He appealed his conviction and sentence to this court but died before his appeal was heard. We requested briefing from the parties on the effect of Hartwell's death. The State submitted a three-page brief requesting that we abate Hartwell's criminal proceedings, a position different from the one it takes today, and describing abatement *ab initio* as the "universal rule" absent a statute to the contrary. Hartwell's attorney submitted a one-page letter requesting that we resolve the appeal, noting that Hartwell's "reputation while alive is important to his three remaining children."

We adopted the doctrine of abatement *ab initio*, holding that "all proceedings are permanently abated as to appellant by reason of his death pending the appeal."[17] We gave three reasons for our holding: (1) "A majority of the federal and state courts where the question has arisen" had adopted the doctrine of abatement *ab initio*; (2) maintaining the conviction did not serve either of the two "underlying principles of penal administration in Alaska[:] . . . reformation and protection of the public"; and (3) "[d]eath ha[d] removed the appellant from the jurisdiction of this court."[18]

When *Hartwell* was decided, a criminal defendant had a right to appeal his conviction and sentence to the supreme court.[19] In 1980, the Alaska Legislature created the court of appeals to hear criminal appeals. Now criminal defendants can appeal to the court of appeals as a matter of right, rather than to the supreme court.[20] Supreme court review of decisions by the court of appeals is discretionary, thus leaving criminal defendants with only one appeal as a matter of right.[21]

Carlin, like Hartwell, died while his appeal as a matter of right was pending. Therefore,

12. *Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 177 P.3d 1181, 1184 (Alaska 2008).

13. *Pratt & Whitney Canada, Inc. v. Sheehan*, 852 P.2d 1173, 1175–76 (Alaska 1993) (quoting *State v. Dunlop*, 721 P.2d 604, 610 (Alaska 1986)).

14. 423 P.2d 282 (Alaska 1967).

15. *Id.* at 283.

16. *Id.*

17. *Id.* at 284.

18. *Id.* at 283–84 (citations omitted).

19. Former AS 22.05.010 (1976), *repealed by* ch. 12, § 2, SLA 1980.

20. AS 22.07.010, .020, *enacted by* ch. 12, § 1, SLA 1980.

21. AS 22.05.010.

our ruling in *Hartwell* controls in *State v. Carlin* unless *Hartwell* is overruled.

In contrast, Dale's appeal to the court of appeals was resolved, and his conviction affirmed. Dale died after we agreed to hear Dale's *discretionary* appeal. For this reason, the State argues that *Hartwell* is not controlling. It urges us to follow the "vast majority of courts that have addressed this issue" and have held that abatement *ab initio* does not apply when a criminal defendant dies during discretionary review.[22] But as Dale's counsel notes, the cases cited by the State involve criminal defendants who died before the higher court acted on their request for discretionary review. There is a substantive difference between those cases and cases where, as here, the court has *granted* the request for discretionary review prior to the defendant's death.

In one case directly on point, *People v. Mazzone,* the Illinois Supreme Court applied the doctrine of abatement *ab initio* to a criminal defendant whose petition for discretionary review had been granted, but who died before the appeal was completed.[23] The court found "the matter [to be] closely analogous to initial appeals as of right, and the reasons justifying abatement [a]b initio there apply equally here." [24] The State seeks to distinguish *Mazzone* by arguing that unlike in Illinois, where "the discretionary nature of the petition process ends with the grant of the petition," in Alaska we retain the right to dismiss a petition as improvidently granted. This attempted distinction lacks merit: In Illinois, as in Alaska, the supreme court can dismiss a petition as improvidently granted.[25]

While Dale, unlike Carlin, already had the benefit of appellate review, in granting his petition we decided that his case was one that warranted further appellate review.[26] By granting Dale's petition for hearing, we gave Dale a right to present his appeal. Once that right has been conferred, there is no obvious basis for distinguishing between Dale's position and that of a criminal defendant who has filed an appeal as a matter of right. Thus, *Hartwell,* while not strictly controlling, is persuasive and should be applied unless it is overruled. We now turn to the question of whether there are grounds for overruling *Hartwell* before examining whether such a departure from the doctrine of abatement *ab initio* is warranted and what alternatives are available.

## B. Are There Grounds For Overruling *Hartwell* ?

■ The State urges us to overrule our decision in *Hartwell.* Stare decisis compels us to approach overruling one of our prior decisions carefully. "[S]tare decisis is a practical, flexible command that balances our community's competing interests in the stability of legal norms and the need to adapt those norms to society's changing demands." [27] We will overrule a decision only when convinced: (1) "that the rule was originally erroneous or is no longer sound because of changed conditions," and (2) "that more good than harm would result from a

---

**22.** *See Surland v. State,* 392 Md. 17, 895 A.2d 1034, 1035 (2006) ("The law throughout the country seems clear, and by now mostly undisputed, that, if the defendant's conviction has already been affirmed on direct appeal and the death occurs while the case is pending further discretionary review by a higher court, such as on *certiorari,* the proper course is to dismiss the discretionary appellate proceeding and leave the existing judgment, as affirmed, intact."); *see also Dove v. United States,* 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976) (dismissing petition for writ of certiorari in criminal case upon notice that petitioner had died); *United States v. Moehlenkamp,* 557 F.2d 126, 127 (7th Cir.1977) (interpreting *Dove* as rejecting doctrine of abatement *ab initio* only for cases in which a petition for writ of certiorari was pending).

**23.** 74 Ill.2d 44, 23 Ill.Dec. 76, 383 N.E.2d 947, 950 (1978).

**24.** *Id.*

**25.** *See, e.g., People v. Thompson,* 167 Ill.Dec. 215, 587 N.E.2d 484 (Ill.1992).

**26.** In 2009 we granted only six of 88 petitions for hearing. ALASKA COURT SYSTEM, ANNUAL STATISTICAL REPORT 2009, at 3, 6 (2010), *available at* http://www.courts.alaska.gov/reports/annualrep-fy09.pdf.

**27.** *Pratt & Whitney Canada, Inc. v. Sheehan,* 852 P.2d 1173, 1175 (Alaska 1993).

departure from precedent."[28] We conclude that both criteria are met here.

### 1. Is *Hartwell* no longer sound because of changed conditions?

The State argues that changes in the past 40 years since *Hartwell* was decided render it no longer sound. These changes include the constitutional recognition of victims' rights as part of the criminal justice process and the growing number of states that have rejected abatement.

■ To support a departure from precedent on the grounds of "changed conditions," a party must show that "related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine, [or] facts have so changed or come to be seen so differently, as to have robbed the old rule of significant application."[29]

### a. Recognition of rights of crime victims

Both the State, and the National Crime Victim Law Institute and Alaska Office of Victims' Rights in their amicus briefs, note the "dramatic shift" in the 40 years since *Hartwell* was decided "to provide substantial constitutional and statutory rights to crime victims during all phases of the criminal justice process." This shift has taken place throughout the country.[30] The State and amici argue that the constitutional and statutory rights of crime victims, increasingly recognized since *Hartwell*, constitute a changed condition that supports reconsideration of

*Hartwell* and abandonment of the doctrine of abatement *ab initio*.

In Alaska, the rights of crime victims were first given legal recognition in 1984, when the Alaska legislature added a statutory provision enumerating those rights.[31] In the same act, the legislature directed judges and parole boards to consider the interests of crime victims when imposing felony sentences or considering the release of prisoners.[32] Five years later, the legislature passed a comprehensive Alaska Crime Victims' Rights Act.[33] The Act codified the rights of crime victims not only to be informed of criminal proceedings but to participate in sentencing and parole decisions.[34] The legislature has continued to promulgate and refine statutes concerning the rights of crime victims, for example defining a restitution order as a "civil judgment," thus allowing a victim to use civil collection procedures to enforce a restitution order.[35]

In 1994 Alaska's voters overwhelmingly approved the Rights of Victims of Crime Amendment to the Alaska Constitution.[36] The amendment added article I, section 24, providing that victims of crimes have "the right to be treated with dignity, respect, and fairness during all phases of the criminal and juvenile justice process" and "the right to restitution from the accused," among other rights.[37] The amendment also revised article I, section 12, which enumerates the goals of the criminal justice system. Prior to the amendment, this section provided that "[p]enal administration shall be based on the prin-

---

**28.** *Id.* at 1175–76 (quoting *State v. Dunlop*, 721 P.2d 604, 610 (Alaska 1986)).

**29.** *Id.* (quoting *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 855, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992)).

**30.** According to the amici, more than thirty states have, like Alaska, amended their constitutions to explicitly provide crime victims with rights and protections in criminal justice proceedings, and every single state and the federal government grant statutory rights to crime victims.

**31.** Ch. 154, § 4, SLA 1984 (codified at AS 12.61.010(a)). These rights included the right to be notified of criminal proceedings, the right to be protected from harm and threats, the right to

be informed of the procedure to obtain restitution, and the right to immediate medical assistance.

**32.** Ch. 154, §§ 1–2, 5–6, 8–9, SLA 1984.

**33.** Ch. 59, SLA 1989.

**34.** *Id.* §§ 4–5, 8, 14, 21, 27–28.

**35.** *See* ch. 92, SLA 2001; ch. 23, SLA 2002; ch. 17, SLA 2004.

**36.** *See* http://www.elections.alaska.gov/doc/forms/H28.pdf.

**37.** Alaska Const. art. I, § 24.

ciple of reformation and upon the need for protecting the public," [38] a statement on which we relied in *Hartwell.*[39] The 1994 amendment expanded the goals of "[c]riminal administration" to include "community condemnation of the offender, the rights of victims of crimes, [and] restitution from the offender." [40]

*Hartwell*'s assertion that the "underlying principles of penal administration in Alaska are reformation and protection of the public" is thus no longer complete. Alaska's statutes and its constitution now also require the criminal justice system to accommodate the rights of crime victims. The abatement of criminal convictions has important implications for these rights. Therefore, the expansion and codification of victims' rights since *Hartwell* provides the changed conditions needed to satisfy the first element of the test for overruling precedent.

### b. Rejection of the abatement *ab initio* doctrine by some state courts

While the doctrine of abatement *ab initio* was the majority rule in federal and state courts when *Hartwell* was decided, the State argues that "a steadily growing number of state courts have rejected the doctrine." [41] According to the State, these state courts have pointed to the unfairness to crime vic-

tims of abating criminal convictions and the doctrine's inconsistency with the presumption of guilt following a jury conviction. Further, the State suggests that "more states have rejected abatement to some degree (22 states) than have retained it fully intact (19 states and the District of Columbia)."

The Public Defender Agency responds that "[a]lthough a few state courts have moved away from the majority rule in the last few decades, a far greater number of state courts have directly affirmed their continued adherence to the doctrine during this same time." [42] The Public Defender Agency points out that two states, Montana and Mississippi, have actually adopted abatement *ab initio* for the first time in the last few decades.[43] By the Public Defender Agency's count, a "majority (or near majority) of state courts that have addressed the abatement issue continue to apply a strict rule of abatement *ab initio.*"

The State and the Public Defender Agency's primary source of disagreement is in how to group the approaches to abatement taken by each state.[44] The Public Defender Agency separates states into four categories: (1) those that dismiss the appeal and abate the criminal conviction (21 states and the District of Columbia); (2) those that dismiss the appeal and do not abate the criminal

**38.** Alaska Const. art. I, § 12 (amended 1994).

**39.** *Hartwell v. State*, 423 P.2d 282, 284 (Alaska 1967).

**40.** Alaska Const. art. I, § 12.

**41.** *See State v. Korsen*, 141 Idaho 445, 111 P.3d 130, 133 (2005) ("[W]hen reviewing the most recent cases, it is apparent that the trend has been away from abating a deceased defendant[']s conviction *ab initio*."); *Surland v. State*, 392 Md. 17, 895 A.2d 1034, 1039 (2006) ("[A]n increasingly smaller majority ... of the courts that have considered the matter adopt this full abatement approach.").

**42.** *See* Tim A. Thomas, Annotation, *Abatement of State Criminal Case by Accused's Death Pending Appeal of Conviction–Modern Cases*, 80 A.L.R.4th 189 (1990 & Supp.2010) ("[T]he most frequently stated rule is that ... the prosecution abates from the inception of the case (ab initio)."); *see also Korsen*, 111 P.3d at 134 (referring to abatement *ab initio* as the "majority rule"); *Surland*, 895 A.2d at 1039 (noting that "a slight majority"

of states apply abatement *ab initio* ). The Public Defender Agency also notes, correctly, that federal courts that have addressed the issue have been essentially unanimous in their application of the doctrine of abatement *ab initio* to abate the conviction of criminal defendants. *See* John H. Derrick, Annotation, *Abatement Effects of Accused's Death Before Appellate Review of Federal Criminal Conviction*, 80 A.L.R. Fed. 446 (1986 & Supp.2009).

**43.** *See Gollott v. State*, 646 So.2d 1297, 1304–05 (Miss.1994) (overruling prior precedent and adopting a modified approach where an appeal may go forward in certain circumstances but a conviction will otherwise be abated); *State v. Holland*, 288 Mont. 164, 955 P.2d 1360, 1361–62 (1998) (overruling prior precedent and joining "the majority of jurisdictions in holding that prosecution of a criminal case abates in its entirety, including fines, upon the death of the criminal defendant").

**44.** To support their analyses, each party has included an appendix where it summarizes each state's caselaw on abatement.

conviction (five states); (3) those that allow the appeal to continue in certain circumstances but otherwise abate the criminal conviction (seven states); and (4) those that allow the appeal to continue in certain circumstances but otherwise do not abate the criminal conviction (four states). Under the Public Defender Agency's analysis, a solid majority of the states that have addressed the issue (21 of 37) abate criminal convictions in all instances and an additional seven states abate criminal convictions in some instances. The State, in contrast, argues that all approaches other than a strict application of the abatement *ab initio* doctrine should be grouped together. It further challenges some of the Public Defender Agency's categorizations. Under the State's analysis, only 19 of 41 states continue to dismiss the appeal and abate the criminal proceedings in all cases.

It is not necessary, or even useful, to choose between these two analyses. Under the characterization of either party, it is clear that the legal landscape is very different than it was when *Hartwell* was decided. Our own count, using slightly different categories than either the State or the Public Defender Agency, confirms this. It appears that the highest courts in 41 states have addressed abatement in some manner. The courts in 19 states have continued to apply strictly the doctrine of abatement *ab initio*.[45] Eight states generally dismiss a deceased defendant's appeal but leave the conviction intact.[46] Two states have unique approaches; Alabama places a particular notation in the

**45.** *State v. Griffin,* 121 Ariz. 538, 592 P.2d 372, 373 (1979) (in banc) ("[D]eath pending appeal abates the appeal and the conviction."); *People v. Gonzalez,* 43 Cal.4th 1118, 77 Cal.Rptr.3d 569, 184 P.3d 702, 704 n. 3 (2008) ("[D]efendant's death will abate his appeal...."); *Crowley v. People,* 122 Colo. 466, 223 P.2d 387, 388 (1950) (en banc) ("As to the deceased, the proceedings are abated by operation of law."); *People v. Mazzone,* 74 Ill.2d 44, 23 Ill.Dec. 76, 383 N.E.2d 947, 950 (1978); *Maghee v. State,* 773 N.W.2d 228, 231 n. 2 (Iowa 2009) ("It is well established that criminal prosecutions, including any pending appellate proceedings, abate upon the death of the defendant."); *State v. Morris,* 328 So.2d 65, 67 (La.1976) ("[W]e adopt the majority rule and hold that because of defendant's death while the appeal was pending, the judgment of conviction must be vacated and all proceedings in the prosecution abated from its inception."); *State v. Carter,* 299 A.2d 891, 894 (Me.1973) ("[T]he death of the defendant in such situation will be held to abate the appeal and require dismissal of it on grounds both of mootness and the inability of the appellate tribunal to proceed because of loss of an indispensable party to the proceeding...."); *Commonwealth v. Latour,* 397 Mass. 1007, 493 N.E.2d 500, 501 (1986) ("When a criminal defendant dies pending his appeal, the general practice is to dismiss the indictment."); *State v. Holland,* 288 Mont. 164, 955 P.2d 1360, 1362 (1998) ("It further appears to us that the best reasoning is represented by the majority of jurisdictions which hold that a criminal proceeding is abated in its entirety upon the death of the criminal defendant."); *State v. Campbell,* 187 Neb. 719, 193 N.W.2d 571, 572 (1972); *State v. Poulos,* 97 N.H. 352, 88 A.2d 860, 861 (1952) ("Since the defendant Derrickson has died pending his appeal, the appeal on his behalf is abated."); *People v. Mintz,* 20 N.Y.2d 753, 283 N.Y.S.2d 120, 229 N.E.2d 712, 713 (1967); *State v. Dixon,* 265 N.C. 561, 144 S.E.2d 622, 622 (1965); *Nott v. State,* 91 Okla.Crim. 316, 218 P.2d 389, 389 (Okla. Crim.App.1950) ("In a criminal prosecution, the purpose of proceedings being to punish the accused, the action must necessarily abate upon his death, and where it is made to appear that the defendant has died pending the determination of the appeal, the cause will be abated."); *State v. Marzilli,* 111 R.I. 392, 303 A.2d 367, 368 (1973); *State v. Hoxsie,* 570 N.W.2d 379, 382 (S.D.1997) (holding that defendant who pleaded guilty and then appealed sentence was only entitled to have sentence abated but stating that it did not intend to disturb the general rule of abatement *ab initio* ); *Carver v. State,* 217 Tenn. 482, 398 S.W.2d 719, 721 (1966) ("[W]e hold that all proceedings in this case against Carver are abated *ab initio*."); *Vargas v. State,* 659 S.W.2d 422, 423 (Tex. Crim.App.1983) (en banc) ("Accordingly, the State's motion to dismiss the appeals is overruled. The appeals, however, as well as any further proceedings in the court below, are ordered permanently abated."); *State v. Free,* 37 Wyo. 188, 260 P. 173, 174 (1927).

**46.** *State v. Trantolo,* 209 Conn. 169, 549 A.2d 1074, 1074 (1988) ("[I]t has become clear that, in this case, there is neither allegation nor evidence that the fine levied against the defendant at trial would be collectible from his estate or that the judgment will otherwise affect its interests. On this state of the record, the defendant's appeal must be dismissed as moot."); *State v. Raffone,* 161 Conn. 117, 285 A.2d 323, 326 (1971) ("[D]ue to the death of Arcangelo, the appeal, as to him, is dismissed as moot."); *Perry v. State,* 575 A.2d 1154, 1156 (Del.1990) ("[A]s a result of Perry's death, and in the absence of any other real party in interest, this Court has been divested of its jurisdiction to proceed with Perry's direct appeal. Consequently, the ultimate disposition in Perry's prosecution will be determined by the *status quo* at the time of his death."); *State v. Clements,* 668 So.2d 980, 981

deceased defendant's record,[47] while Oregon gives judges discretion both to dismiss the appeal and to vacate the judgment.[48] Eight states allow some mechanism for the appeal to continue with substitution; if no substitution occurs some of those states abate the conviction while others allow it to stand.[49] Two states simply proceed with the appeal.[50] This new diversity of opinions among the high courts of states throughout the country is another reason to conclude that the "changed conditions" element of the test for overruling precedent is satisfied.[51]

### 2. Would more good than harm result from overruling *Hartwell* ?

■ Because the State has successfully demonstrated changed conditions, we must consider whether "more good than harm would result from a departure from precedent" in this instance.[52] In analyzing this element, we must balance the benefits of adopting a new rule against the benefits of stare decisis: providing guidance for the conduct of individuals, creating efficiency in litigation by avoiding the relitigation of decided issues, and maintaining public faith in the

---

(Fla.1996) ("[W]e hold that upon the death of a criminal defendant, the appeal of a conviction may be dismissed but is not to be abated ab initio."); *State v. Korsen*, 141 Idaho 445, 111 P.3d 130, 135 (2005) ("[W]e hold that a criminal conviction and any attendant order requiring payment of court costs and fees, restitution or other sums to the victim, or other similar charges, are not abated, but remain intact, in the event of the defendant's death following conviction and pending appeal."); *Whitehouse v. State*, 266 Ind. 527, 364 N.E.2d 1015, 1016 (1977); *People v. Peters*, 449 Mich. 515, 537 N.W.2d 160, 163 (1995) ("Where a defendant dies pending an appeal of a criminal conviction, we hold that the appeal should be dismissed, but the conviction retained."), *cert. denied, Peters v. Michigan*, 516 U.S. 1048, 116 S.Ct. 710, 133 L.Ed.2d 665 (1996); *State v. Anderson*, 281 S.C. 198, 314 S.E.2d 597, 597 (1984); *State v. Christensen*, 866 P.2d 533, 535 (Utah 1993). Three states dismiss the pending appeal upon defendant's death, but it is unclear whether the underlying conviction is abated. *See Harris v. State*, 229 Ga. 691, 194 S.E.2d 76, 77 (1972); *Royce v. Commonwealth*, 577 S.W.2d 615, 616 (Ky.1979) ("The fact of the conviction, whether it be regarded as legally final or not, is history, and as such it cannot be expunged. What meaning and effect it may have at some other time and place is not for the court to determine here and now."); *In re Carlton*, 285 Minn. 510, 171 N.W.2d 727, 728 (1969).

**47.** *Wheat v. State*, 907 So.2d 461, 464 (Ala.2005) ("We therefore hold that when a person convicted of a crime dies while an appeal is pending in the Court of Criminal Appeals and that court abates the appeal, pursuant to Rule 43(a), Ala. R.App. P., by reason of the death of that person, the Court of Criminal Appeals shall instruct the trial court to place in the record a notation stating that the fact of the defendant's conviction removed the presumption of the defendant's innocence, but that the conviction was appealed and it was neither affirmed nor reversed on appeal because the defendant died while the appeal of the conviction was pending and the appeal was dismissed.").

**48.** Or. R.App. P. 8.05.

**49.** *State v. Makaila*, 79 Hawai'i 40, 897 P.2d 967, 972 (1995); *Surland v. State*, 392 Md. 17, 895 A.2d 1034, 1044–45 (2006); *Gollott v. State*, 646 So.2d 1297, 1304–05 (Miss.1994) ("Thus, the state, in order to avoid abatement *ab initio* of the proceedings, may file a Rule 43(a) motion, in which case we will substitute the decedent's representative, or where appropriate, counsel of record, as party appellant and determine the merits of the appeal."); *City of Newark v. Pulverman*, 12 N.J. 105, 95 A.2d 889, 894 (1953) ("We hold the belief that there is likewise no mootness insofar as the family of a deceased defendant is concerned and that his legal representative should have the opportunity to establish on appeal that the conviction was wrongful."); *State v. Salazar*, 123 N.M. 778, 945 P.2d 996, 1004 (1997) ("This right is best vindicated by permitting the courts either (1) to continue the appeal where a party moves for substitution or where the court deems that the interests involved warrant completion of the review, or (2) to completely abate the proceedings to their inception."); *State v. McGettrick*, 31 Ohio St.3d 138, 509 N.E.2d 378, 381–82 (1987); *State v. Webb*, 167 Wash.2d 470, 219 P.3d 695, 699 (2009) (en banc) ("We hold that when a [defendant] dies during the pendency of his or her appeal, that appeal may be pursued by a party substituted under the provisions of RAP 3.2."); *State v. McDonald*, 144 Wis.2d 531, 424 N.W.2d 411, 414 (1988) ("[W]e conclude that, when a defendant dies pending appeal, regardless of the cause of death, the defendant's right to an appeal continues.").

**50.** *State v. Jones*, 220 Kan. 136, 551 P.2d 801, 804 (1976); *Commonwealth v. Walker*, 447 Pa. 146, 288 A.2d 741, 744 (1972).

**51.** *See Kinegak v. State, Dep't of Corr.*, 129 P.3d 887, 890 (Alaska 2006) (finding the "changed conditions" element to be satisfied "based primarily on changes in the federal cases in the years since [the prior case] was decided").

**52.** *Thomas v. Anchorage Equal Rights Comm'n*, 102 P.3d 937, 943 (Alaska 2004).

judiciary.[53] These countervailing interests do not weigh heavily in this case. It is unclear how an individual would rely on the rule adopted in *Hartwell.* That is, it is unlikely that a person would commit a crime because he believed that, upon his death while his appeal was pending, his conviction would be abated. As for the efficiency rationale, while it is true that overturning *Hartwell* would result in some additional litigation of the continued appeals of deceased defendants, the number of such cases should be small. As for the third factor, public faith in the judiciary, allowing continued appeals will protect both victims and defendants by providing the opportunity to have criminal charges fully litigated and decided.

### C. Substitution Is The Appropriate Rule To Replace Abatement *Ab Initio.*

The plurality of state courts that have considered the issue strictly apply the doctrine of abatement *ab initio.*[54] The Public Defender Agency urges us to continue to apply this majority rule. In these states, when a criminal defendant dies while the defendant's appeal is pending, the entire criminal prosecution including the conviction

is abated. Courts adopting abatement *ab initio* argue that the death of a criminal defendant pending appeal frustrates his appeal rights and requires the abatement of his conviction.[55]

On the other extreme are those states that generally dismiss a deceased defendant's appeal but leave the conviction intact. We count eight states that follow this approach.[56] Regardless of which rule it has ultimately adopted, almost every court that has discussed the abatement issue has noted that a defendant is no longer presumed innocent after a conviction; rather a convicted defendant is presumed guilty despite the pendency of an appeal,[57] and the conviction is presumed to have been validly obtained.[58]

■ Neither extreme seems to us to strike the correct balance. While abatement is contrary to the victims' rights under the Alaska Constitution, relying on the presumption of guilt after conviction to leave the conviction intact is contrary to the defendant's right to appeal. Therefore, we choose the middle path, electing to follow those courts that allow the appeal to continue upon substitution.[59] These courts have provided that either the State or the defendant's estate may request substitution, allowing another party

---

**53.** *See Pratt & Whitney Canada, Inc. v. Sheehan,* 852 P.2d 1173, 1175–76 n. 4 (Alaska 1993) (citing *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 403, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970)).

**54.** *See supra* note 45.

**55.** *See, e.g., United States v. Moehlenkamp,* 557 F.2d 126, 128 (7th Cir.1977) ("[W]hen an appeal has been taken from a criminal conviction to the court of appeals and death has deprived the accused of his right to [an appellate] decision, the interests of justice ordinarily require that he not stand convicted without resolution of the merits of his appeal...."); *People v. Rickstrew,* 961 P.2d 1139, 1140 (Colo.App.1998) ("[W]hen an appeal has been taken from a conviction and death deprived the accused of his or her right to appellate review, the defendant should not stand convicted.").

**56.** *See supra* note 46.

**57.** *See, e.g., Wheat v. State,* 907 So.2d 461, 462 (Ala.2005) ("A conviction in the circuit court removes the presumption of innocence, and the pendency of an appeal does not restore that presumption."); *State v. Clements,* 668 So.2d 980, 981 (Fla.1996) ("This Court has stated that

the presumption of innocence ceases upon the adjudication of guilt and the entry of sentence." (internal quotation marks omitted)); *Whitehouse v. State,* 266 Ind. 527, 364 N.E.2d 1015, 1016 (1977) ("The presumption of innocence falls with a guilty verdict."); *People v. Peters,* 449 Mich. 515, 537 N.W.2d 160, 163 (1995) ("The conviction of a criminal defendant destroys presumption of innocence regardless of the existence of an appeal of right."); *State v. McGettrick,* 31 Ohio St.3d 138, 509 N.E.2d 378, 380 (1987) (stating that a convicted defendant "no longer stands cloaked with the presumption of innocence during the appellate process"); *State v. Devin,* 158 Wash.2d 157, 142 P.3d 599, 605 (2006) (en banc) ("[T]here is no presumption of innocence pending appeal.").

**58.** *Clements,* 668 So.2d at 981 ("Furthermore, we have held that a judgment of conviction comes for review with a presumption in favor of its regularity or correctness."); *Whitehouse,* 364 N.E.2d at 1016 ("[When a guilty verdict is issued,] although preserving all of the rights of the defendant to an appellate review, for good and sufficient reasons we presume the judgment to be valid, until the contrary is shown.").

**59.** *See supra* note 49.

to be substituted for the defendant. Specifically, we agree with the high courts of Washington and Maryland that the defendant's estate may substitute in for the deceased appellant. We so decide because allowing the defendant's appeal to continue when the defendant's estate does not wish it would undermine the right to appeal that substitution is meant to protect.[60]

### 1. Jurisdiction

 Courts that automatically dismiss a deceased defendant's appeal have assumed that an appellate court may not proceed with the appeal because it has lost jurisdiction.[61] However, as we recognize in Appellate Rule 516, the death of an appellant should not cause the court to lose jurisdiction over the defendant or the appeal.[62] A court obtains personal jurisdiction over a criminal defendant by the service of a summons and complaint or by arrest.[63] Once personal jurisdiction is obtained over a party, it will generally not be lost as a result of subsequent events.[64] The trial court properly obtained personal jurisdiction over both Carlin and Dale, and

---

**60.** The courts that have allowed substitution have done so pursuant to their appellate rules. *See, e.g., State v. Makaila,* 79 Hawai'i 40, 897 P.2d 967, 972 (1995) ("By its plain language, HRAP Rule 43(a) allows for the substitution of a party for a deceased criminal defendant." (internal citation omitted)); *Gollott v. State,* 646 So.2d 1297, 1304 (Miss.1994) ("On its face, Rule 43(a) allows for a substituted party in place of a criminal defendant."); *State v. Salazar,* 123 N.M. 778, 945 P.2d 996, 1003 (1997) ("The language of the [appellate] rule clearly permits the personal representative or 'any other party' to seek substitution of the deceased."); *McGettrick,* 509 N.E.2d at 381 ("The [appellate substitution] rule clearly permits the decedent's personal representative to be substituted as a party...."); *State v. Webb,* 167 Wash.2d 470, 219 P.3d 695, 699 (2009) (en banc) ("We hold that when a decedent dies during the pendency of his or her appeal, RAP 3.2 permits a party to be substituted on appeal."). Alaska Appellate Rule 516 provides for substitution upon the death of a party to an appeal, but applies only to civil appeals. Because Alaska has no appellate rule providing for substitution in criminal cases, we refer this matter to the Supreme Court's Standing Advisory Committee on Appellate Rules. Until the rules committee promulgates a new rule, a defendant's personal representative may substitute upon the defendant's death. In the absence of an appearance and substitution, the conviction will stand. We do not now address whether any other party besides the defendant's personal representative has the right to substitute. In referring this matter to the rules committee, we note the thoughtful discussion of the issue by the Washington Supreme Court in *State v. Devin,* 158 Wash.2d 157, 142 P.3d 599, 606 (2006):

[W]e do not preclude courts from abating financial penalties still owed to the county or State, as opposed to restitution owed to victims, where the death of a defendant pending an appeal creates a risk of unfairly burdening the defendant's heirs.

**61.** *See Hartwell v. State,* 423 P.2d 282, 284 (Alaska 1967) ("Death has removed the appellant from the jurisdiction of this court."); *Perry v. State,* 575 A.2d 1154, 1156 (Del.1990) ("Therefore, as a result of Perry's death, and in the absence of any other real party in interest, this Court has been divested of its jurisdiction to proceed with Perry's direct appeal.... Perry's appeal is moot and is [dismissed]."); *State v. Kriechbaum,* 219 Iowa 457, 258 N.W. 110, 113 (Iowa 1934) ("Death withdrew the defendant from the jurisdiction of the court. It left no apportionment of jurisdiction."); *State v. Holland,* 288 Mont. 164, 955 P.2d 1360, 1362 (1998) ("In a criminal case, however, no case or controversy remains upon the death of the defendant."); *State v. Campbell,* 187 Neb. 719, 193 N.W.2d 571, 572 (1972) ("The death of the defendant makes the case moot and requires dismissal of the appeal.").

**62.** *Cf. Collison v. Thomas,* 55 Cal.2d 490, 11 Cal.Rptr. 555, 360 P.2d 51, 54 (1961) (in bank) ("The court did not lose jurisdiction of the case in the strict sense upon Mrs. Kellogg's death. This is established by the many cases in this state holding that the death of a party pending suit does not oust the jurisdiction of the court, and hence that the judgment is voidable only, not void. This does not mean that a judgment can be really rendered for or against a dead man, but that it can be rendered nominally for or against him, as representing his heirs, or other successors, who are the real parties intended." (internal quotation marks omitted)).

**63.** *See State v. Gottschalk,* 138 P.3d 1170, 1173 (Alaska App.2006) (Mannheimer, J., concurring) (citing Alaska R.Crim. P. 4).

**64.** *See Kotsonis v. Superior Motor Express,* 539 F.Supp. 642, 646 (M.D.N.C.1982) (stating that, in the context of transfer of venue, "[p]ersonal jurisdiction once obtained is not lost."); *Gilford v. People,* 2 P.3d 120, 130 (Colo.2000) (en banc) (Hobbs, J., concurring) (explaining that "[a] court does not generally lose jurisdiction by the occurrence of a subsequent event, even if that event would have prevented acquiring jurisdiction in the first instance"); *Boardman v. Boardman,* 135 Conn. 124, 62 A.2d 521, 525 (1948) (regarding as settled law that "if a court of a

they are, in a technical sense, still subject to the jurisdiction of the Alaska courts, including the appellate court.

Nor does an appellate court lose subject matter jurisdiction over an appeal when a party dies.[65] Under AS 22.07.020 the court of appeals has appellate jurisdiction over criminal prosecutions commenced in superior court. The supreme court has final appellate jurisdiction in all actions and proceedings, including jurisdiction to "in its discretion review a final decision of the court of appeals."[66] No statute or court rule divests these appellate courts of jurisdiction upon the death of a party. To the contrary, in the case of civil appeals, the Alaska Appellate Rules specifically provide that the "death of a party ... shall not affect any appeal taken or petition for review made."[67] Thus, neither Carlin's nor Dale's appeal is subject to dismissal based on lack of personal or subject matter jurisdiction.

## 2. Mootness

We will generally "refrain from deciding questions where the facts have rendered the legal issues moot."[68] A case becomes moot when it "has lost its character as a present, live controversy" or when the "party bringing the action would not be entitled to any relief even if" the party prevails.[69]

But a criminal appeal, even after the defendant has died, may remain a "present, live controversy." Often, there will be a financial component, such as restitution, to a criminal judgment, and the appeal will thus have financial consequences for the defendant's estate. This situation is analogous to disputes over attorney's fees in civil cases that are otherwise moot. In *LaMoureaux v. Totem*

*Ocean Trailer Express, Inc.* we held that such cases may continue.[70]

Even without monetary consequences, the appeal is not necessarily moot. As discussed above, the particular sentence a defendant is to receive is but one component of the administration of criminal justice. Article I, section 12 of the Alaska Constitution provides that "[c]riminal administration shall be based upon the following: the need for protecting the public, community condemnation of the offender, the rights of victims of crimes, restitution from the offender, and the principle of reformation."[71] The interests of the victim and the community's interest in condemning the offender persist even after the defendant's death.

The defendant's interests also support treating the appeal as not moot. The appeal has important consequences for the defendant's reputation and estate, as explained by the former Chief Justice of the Supreme Court of Wisconsin:

> It is not [defendant's] appeal which is moot, as the dissent would have it, but rather it is his death which is moot, because he did not take the potential errors of our justice system into the grave with him. These potential errors remain behind to perplex and confound his relatives, friends, reputation, and the legal system. Indeed, an important point of the majority opinion is that these errors remain behind to worry society at large, because such important collateral matters as inheritance, insurance benefit distribution, and distribution of various property may wind up being conclusively determined without benefit of a review for error in the poten-

state has jurisdiction when an action is brought to it, a subsequent removal of a party from the state will not terminate that jurisdiction"); *People v. Goecke*, 457 Mich. 442, 579 N.W.2d 868, 876 (1998) ("Having once vested in the circuit court, personal jurisdiction [over a criminal defendant] is not lost even when a void or improper information is filed.").

65. *See United States v. Christopher*, 273 F.3d 294, 297 (3d Cir.2001) (determining that appellate jurisdiction is not at issue where "defendant dies after appealing the entry of a judgment of sentence" because a final order has been entered).

66. AS 22.05.010(a), (d).

67. Alaska R.App. P. 516(a).

68. *O'Callaghan v. State*, 920 P.2d 1387, 1388 (Alaska 1996) (internal quotation marks omitted).

69. *Gerstein v. Axtell*, 960 P.2d 599, 601 (Alaska 1998).

70. 651 P.2d 839, 840 n. 1 (Alaska 1982).

71. Alaska Const. art. I, § 12.

tially controlling criminal action.[72]

### 3. Representation

Though the death of a criminal defendant does not require dismissal of the appeal for mootness or lack of jurisdiction, it creates obvious practical complications for continuing an appeal. Of immediate concern will likely be whether, after the defendant dies, his attorney can continue to prosecute the appeal. If the defendant's attorney can no longer act as defendant's representative, then the appeal may be subject to dismissal for failure to prosecute.[73] The Court of Appeals of Maryland thoughtfully discussed this issue. It first noted that "the defendant's death, as a matter of agency law, would ordinarily terminate the lawyer-client relationship and, with that termination, the authority of the erstwhile agent … to continue an appeal already noted." [74] But taken to its logical extreme, continued the court, that conclusion would prevent defendant's counsel from moving for dismissal of the prosecution and even seeking to abate the conviction.[75] In *Carlin v. State*, the Public Defender Agency filed such a motion before the court of appeals. Because courts allow these motions, an attorney must have some authority

to act on behalf of a deceased client. The Maryland court further observed that, "[a]s a practical matter, the role that the client plays in criminal appeals is very limited." [76]

▇▇▇▇▇ In the case of a privately retained attorney, the personal representative of the defendant's estate can elect to continue the attorney's services. We conclude that the public defender is also authorized to continue representing a deceased defendant after the personal representative of the defendant's estate chooses to continue the appeal. The Public Defender Act provides that "[a]n indigent *person* who is under formal charge of having committed a serious crime and the crime has been the subject of an initial appearance or subsequent proceeding, or is being detained under a conviction of a serious crime" is entitled to "be represented." [77] At oral argument, there was debate about whether the word "person" could include a deceased defendant. Some courts, when construing other statutes using the word "person," have held that "person" can include the deceased [78] while other courts have held that it cannot.[79] In the context of appeals on behalf of deceased defendants, Maryland has allowed continued representation by the public defender.[80] Because the purpose of the

---

**72.** *State v. McDonald*, 144 Wis.2d 531, 424 N.W.2d 411, 415 (1988) (Heffernan, C.J., concurring).

**73.** Alaska R.App. P. 511.5; *see also* Alaska R. Civ. P. 25(a) (civil case dismissed if no timely motion for substitution is made following the death of a party); *Surland v. State*, 392 Md. 17, 895 A.2d 1034, 1045 (2006) ("If no substituted party comes forth within the time allotted by Rule 1-203(d) and elects to continue the appeal, it will be dismissed, not for mootness but for want of prosecution, and, as with any appeal that is dismissed, the judgment will remain intact.").

**74.** *Surland*, 895 A.2d at 1041, 1045.

**75.** *Id.* at 1041. The Supreme Court of Idaho, after noting that "[a]n attorney in a criminal case may not withdraw from representation of a defendant without leave of court," held that an attorney has the authority to file a motion to abate the conviction of a client that has died during an appeal. *State v. Korsen*, 141 Idaho 445, 111 P.3d 130, 132–33 (2005).

**76.** *Surland*, 895 A.2d at 1041 n. 3; *see also Coffman v. State*, 172 P.3d 804, 807 (Alaska App. 2007) ("[E]ven though it is the [criminal] defendant's decision *whether* to appeal, it is the attor-

ney's role to decide *which issues* to raise on appeal.").

**77.** AS 18.85.100(a) (emphasis added).

**78.** *See, e.g., United States v. Maciel–Alcala*, 612 F.3d 1092 (9th Cir.2010), *cert. denied, Maciel–Alcala v. United States*, ─── U.S. ───, 131 S.Ct. 673, 178 L.Ed.2d 501, 2010 WL 4168514 (Nov. 29, 2010); *United States v. LaFaive*, 618 F.3d 613, 618 (7th Cir.2010) ("We are also unpersuaded that because some states have drafted identity theft statutes that explicitly mention deceased individuals, we should not read deceased persons into the definition of "person" in § 1028A. That Congress could have drafted the statute differently does not negate the plain meaning of the statute as enacted."); *State v. Hardesty*, 42 Kan. App.2d 431, 213 P.3d 745, 749 (2009) (holding that an identity theft statute's use of term "person" included both living and deceased victims of identity theft).

**79.** *See, e.g., Guyton v. Phillips*, 606 F.2d 248, 250–51 (9th Cir.1979).

**80.** *Surland v. State*, 392 Md. 17, 895 A.2d 1034, 1045 (2006) ("Because counsel, whether private counsel or the Public Defender, is usually already

Public Defender Act is to provide representation comparable to representation by private attorneys,[81] we interpret the Public Defender Act to allow continued representation on appeal after the death of the defendant where the defendant's estate chooses to proceed with the appeal.

## V. CONCLUSION

In *State v. Carlin*, we REVERSE the order of the court of appeals granting the motion by Carlin's counsel to dismiss Carlin's appeal and abate his criminal proceedings. We REMAND to the court of appeals to continue the case for 60 days, during which time Carlin's estate may move for substitution and to proceed with the appeal; if no motion is filed, the court of appeals is direct-

ed to dismiss the appeal and to leave Carlin's conviction intact. In *Dale v. State*, we DENY the State's motion to dismiss the appeal and Dale's attorney's cross-motion for abatement *ab initio* or to continue the appeal. Dale's estate has 60 days in which to move for substitution and to proceed with the appeal; if no motion is filed, we will dismiss the petition and leave Dale's conviction intact.

in the case and, but for the appellant's death, would be obliged to see it through, we see no reason why, unless a substituted party obtains other counsel, counsel already of record should not continue to prosecute the appeal, as they were employed or appointed to do.").

**81.** *See McKinnon v. State*, 526 P.2d 18, 22 (Alaska 1974) ("Once counsel is appointed to repre-

sent an indigent defendant, whether it be the public defender or a volunteer private attorney, the parties enter into an attorney-client relationship which is no less inviolable than if counsel had been retained.") (quoting *Smith v. Superior Court*, 68 Cal.2d 547, 68 Cal.Rptr. 1, 440 P.2d 65, 74 (1968)).