IN THE SUPREME COURT OF THE STATE OF MONTANA

DA 11-0031

2012 MT 33

_____

STATE OF MONTANA,

       Plaintiff and Appellee,

    v.

WESLEY WILLIAM BENN,

       Defendant and Appellant.

O P I N I O N
A N D
O R D E R

_____

¶1    Colin M. Stephens, counsel for Appellant Wesley William Benn, filed a notice advising that Benn passed away on July 26, 2011. The State of Montana moved for dismissal, arguing that Benn's death had mooted the appeal. Benn's counsel filed a response opposing the State's motion, and suggesting that this Court's precedent, particularly, our last ruling on this issue in *State v. Holland*, 1998 MT 67, 288 Mont. 164, 955 P.2d 1360, was unclear about the effect of a defendant's death upon the proceeding. We concluded the issue warranted further consideration and ordered the parties to submit supplemental briefing that analyzed, inter alia, recent decisions by other state courts addressing the issue. That briefing has now been filed.

¶2    Benn was convicted by jury of sexual intercourse without consent and sexual assault on May 7, 2010. The District Court sentenced Benn to 100 years in the Montana State Prison, with 50 years suspended, for sexual intercourse without consent, and to 50 years in prison, with all 50 years suspended, for sexual assault to run consecutively with the sentence for sexual intercourse without consent. The court imposed a 25-year parole

eligibility restriction, designated Benn a Level II sexual offender, and ordered Benn to pay the costs associated with the victim's therapy.  Benn filed a notice of appeal from the judgment on January 18, 2011 and filed his opening brief on June 30, 2011, raising three issues:  1) whether the District Court erred in instructing the jury on the sexual assault charge; 2) whether Benn's trial counsel rendered ineffective assistance by failing to move for a continuance of a hearing when a witness became ill; and 3) whether Benn's lengthy sentence "shocked the conscience" and violated his constitutional rights in light of his failing health.  Benn died the following month.

¶3      In *Holland*, the Defendant died pending his appeal, and the State, as here, moved for dismissal of the appeal.  *Holland*, ¶¶ 1-2.  We stated we had "consistently held that the death of an accused pending the appeal of a judgment of conviction abates the appeal," although noting that none of our previous cases had "made reference to abating the underlying criminal proceedings."  *Holland*, ¶¶ 3-4.  We rejected the argument of Defendant's counsel that an appeal should be decided on the merits following a defendant's death, *Holland*, ¶¶ 5, 8, and concluded that "[i]t further appears to us that the best reasoning is represented by the majority of jurisdictions which hold that a criminal proceeding is abated in its entirety upon the death of the criminal defendant."  *Holland*, ¶ 8.  As has been explained, "'[i]n the abatement *ab initio* scheme, the judgment is vacated and the indictment is dismissed, but only because the convicted defendant died.'" *Ex parte Estate of Cook*, 848 So. 2d 916, 919 (Ala. 2002) (citation omitted); *see also State v. Carlin*, 249 P.3d 752, 756 (Alaska 2011) (citation omitted) (under abatement *ab initio*, "'all proceedings are permanently abated as to appellant by reason of his death'").

¶4      The State argues that *Holland* is manifestly wrong and should be overruled.  It argues that the doctrine of abatement *ab initio* embraced in *Holland* originated prior to

2

the recognition of victims' rights, which *Holland* failed to address. It notes that Montana has passed laws requiring the payment of restitution to victims and that, in 1998, Article II, Section 28 of the Montana Constitution was amended to add "restitution for victims" as a principle of the State's criminal justice policy. Montana's legislatively-enacted correctional and sentencing policy now calls for "restitution, reparation, and restoration to the victim of the offense." Section 46-18-101(2)(c), MCA. The State offers that other state courts have reevaluated their approach to this issue and have overruled prior cases abating criminal proceedings *ab initio*. The State also argues that upon a defendant's death an appeal should be dismissed as moot because it is not possible to grant effective relief to the parties, noting that if a defendant were to prevail, the State could not retry the defendant and obtain a judgment requiring payment of restitution to victims.

¶5　　Benn's counsel discusses and categorizes court decisions demonstrating the different approaches taken by state courts. He "does not specifically advocate for a policy of abatement ab initio," but rather urges the Court to choose a middle path between abatement *ab initio* and dismissal of the appeal as moot. He indicates that Benn's mother has been appointed Benn's personal representative and asks that she be allowed "to substitute in as the party to his appeal and decide whether or not she wants the appeal to run its course." He notes that M. R. App. P. 25 provides for substitution of a party upon death in a civil case, and argues that the absence of such a procedure in criminal cases violates constitutional protections to equal protection, due process, and access to courts. He argues that Benn's appeal should be allowed to continue to protect his reputation and clear his name, and because Benn's criminal conviction may affect potential civil litigation. While conceding that the third issue raised by Benn's briefing,

challenging his sentence, has been mooted, Benn's counsel argues that Issues 1 and 2 are still appropriate for review.

¶6      *Holland* was a brief opinion which, as the State notes, did not address a number of relevant considerations.  First, as both parties acknowledge, a judgment of conviction is presumptively valid.  *See State v. Smerker*, 2006 MT 117, ¶ 36, 332 Mont. 221, 136 P.3d 543 (citation omitted) ("prior convictions are presumed to be valid"); *DeVoe v. State*, 281 Mont. 356, 364, 935 P.2d 256, 260 (1997) (citation omitted) ("[a] district court's findings and judgment are presumed correct").  Upon conviction, a defendant loses the presumption of innocence and a presumption arises in favor of the judgment.  As the United States Supreme Court has explained, "[a]fter a judgment of conviction has been entered, however, the defendant is no longer protected by the presumption of innocence." *McCoy v. Ct. of Appeals of Wis., Dist. 1*, 486 U.S. 429, 436, 108 S. Ct. 1895, 1900 (1988); *see also In re Wheat v. State*, 907 So. 2d 461, 462 (Ala. 2005) ("A conviction in the circuit court removes the presumption of innocence, and the pendency of an appeal does not restore that presumption."); *Carlin*, 249 P.3d at 762 ("[A]lmost every court that has discussed the abatement issue has noted that a defendant is no longer presumed innocent after a conviction; rather a convicted defendant is presumed guilty despite the pendency of an appeal, and the conviction is presumed to have been validly obtained."). After conviction, the burden shifts to the defendant to demonstrate that the judgment has been entered in error.  *See State v. Giddings*, 2009 MT 61, ¶ 69, 349 Mont. 347, 208 P.3d 363 ("The appellant bears the burden to establish error by a district court.").  Courts considering this issue have reasoned that abatement of the proceeding *ab initio* upon the death of the defendant is contrary to the principle that a criminal judgment is presumed to be valid.  "[A]utomatic abatement of the entire criminal proceeding *ab initio* . . .

4

disregards entirely the presumptive validity of the conviction . . . ." *Surland v. State*, 895 A.2d 1034, 1044 (Md. 2006). "[T]here is a strong public policy against the doctrine. Abatement *ab initio* allows a defendant to stand as if he never had been indicted or convicted." *State v. Korsen*, 111 P.3d 130, 134 (Idaho 2005).

¶7     Further, courts have expressed concern about the effect which abatement *ab initio* has upon victims, to whom restitution may have been ordered by the judgment. "[A]batement of the conviction would deny the victim of the fairness, respect and dignity guaranteed by these [restitution] laws by preventing the finality and closure they are designed to provide." *Korsen*, 111 P.3d at 135; *see also State v. Devin*, 142 P.3d 599, 606 (Wash. 2006) (abatement *ab initio* "threatens to deprive victims of restitution that is supposed to compensate them for losses caused by criminals"); *Wheat*, 907 So. 2d at 463 (citation and emphasis omitted) ("'We expect this trend [away from abatement *ab initio*] will continue as the courts and public begin to appreciate the callous impact such a procedure necessarily has on the surviving victims of violent crime.'"). Consequently, "the trend has been away from abating a deceased defendant's conviction *ab initio*." *Korsen*, 111 P.3d at 133.

¶8     For these reasons, we likewise hold that abatement of the proceeding *ab initio* is an inappropriate resolution of a case when the defendant has died. We conclude that we manifestly erred in *Holland* by failing to consider all of the relevant factors at issue, including the presumptive validity of the judgment. Further, the law which has developed since *Holland* has challenged the wisdom of the policy of abating criminal proceedings upon a defendant's death. "*[S]tare decisis* does not require that we follow a manifestly wrong decision." *Formicove, Inc. v. Burlington Northern, Inc.*, 207 Mont. 189, 194-95, 673 P.2d 469, 472 (1983) (citations omitted). We thus overrule *Holland*'s

5

holding that "a criminal proceeding is abated in its entirety upon the death of the criminal defendant." *Holland*, ¶ 8.

¶9 Turning to the parties' mootness arguments, we have explained that the judicial power of the courts is limited to "'justiciable controversies.'" *Plan Helena, Inc. v. Helena Reg'l Airport Auth. Bd.*, 2010 MT 26, ¶ 6, 355 Mont. 142, 226 P.3d 567 (citing *Greater Missoula Area Fed'n. of Early Childhood Educators v. Child Start, Inc.*, 2009 MT 362, ¶ 22, 353 Mont. 201, 219 P.3d 881); *Gateway Opencut Mining Action Group v. Bd. of Co. Comm'rs of Gallatin Co.*, 2011 MT 198, ¶ 16, 361 Mont. 398, 260 P.3d 133. "[A] 'controversy,' in the constitutional sense, is one that is 'definite and concrete, touching legal relations of parties having adverse legal interests'; it is 'a real and substantial controversy, admitting of specific relief through decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts, or upon an abstract proposition.'" *Plan Helena*, ¶ 9 (citation omitted). Further, "[t]he mootness doctrine is closely related to these principles. Under that doctrine, the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Plan Helena*, ¶ 10 (citations omitted). Consequently, if "the issue presented at the outset of the action has ceased to exist or is no longer 'live,' or if the court is unable due to an intervening event or change in circumstances to grant effective relief or to restore the parties to their original position, then the issue before the court is moot." *Plan Helena*, ¶ 10 (citation omitted). We must determine whether a defendant's death during appeal of a criminal judgment is such an "intervening event or change in circumstances" which renders the appeal moot. *See Plan Helena*, ¶ 10.

¶10     Generally, the relief sought in criminal appeals is individual to the defendant, who challenges the rulings or procedure in the trial court which led to his conviction by verdict or plea, and seeks dismissal of a charge, a new trial, or a new sentence.  The defendant's death will often render the requested relief futile, as further proceedings against the defendant upon remand would be impossible.  Even if affirmed, a judgment may be rendered ineffectual because supervision or incarceration of the defendant would no longer be possible or necessary.  *See Surland*, 895 A.2d at 1042 ("If affirmed, the judgment cannot be executed; a dead defendant obviously cannot be imprisoned or made to satisfy conditions of probation.  If reversed, there can be no retrial and no practical benefit to the defendant.").  In such cases, this Court would be unable "to grant effective relief or to restore the parties to their original position," *Plan Helena*, ¶ 10, and the appeal would be subject to dismissal on mootness grounds.  While a defendant or his survivors may have an interest in pursuing an appeal for purely personal reasons, such as vindication or reputation, an appeal based solely on such purposes would not constitute a case which is "definite and concrete . . . a real and substantial controversy, admitting of specific relief through decree of conclusive character," and is subject to dismissal.  *Plan Helena*, ¶ 9 (internal quotations and citation omitted).  Similarly, the mere potential impact of a conviction upon other civil obligations or proceedings does not make an appeal a "definite and concrete" dispute which would satisfy justiciability requirements.

¶11     However, we recognize that it is possible a criminal appeal could involve issues which are not mooted because of a defendant's death.  For example, a restitution condition imposed within a criminal judgment may be enforceable by victims against the defendant's estate.  *See Carlin*, 249 P.3d at 764 ("Often, there will be a financial component, such as restitution, to a criminal judgment, and the appeal will thus have

7

financial consequences for the defendant's estate."). A challenge on appeal to the amount of restitution ordered by the sentence, for example, may remain a viable and concrete issue for which this Court would be able to grant effective relief between the parties. The right to appeal a criminal judgment should not be denied as to issues which have not been mooted by the defendant's death.

¶12 As discussed above, a judgment is presumed to be valid and, in a criminal appeal, the burden to demonstrate reversible error is on the defendant. Likewise, upon a defendant's death, the task of demonstrating that the appeal has not been mooted will be the burden of the defendant's personal representative. If the defendant's representative establishes that the appeal involves concrete issues beyond those which are individual or personal to the defendant, for which this Court can grant effective relief, then the appeal may proceed. If the defendant's representative fails to carry this burden, the appeal will be dismissed as moot and the judgment will remain as entered. If no party steps forward to be appointed personal representative of the defendant's estate and to pursue the appeal, the appeal will be subject to dismissal for failure to prosecute. *See Surland*, 895 A.2d at 1045; *see also Carlin*, 249 P.3d at 765. Again, the judgment would remain as entered.

¶13 The parties have pointed out that M. R. App. P. 25 provides for substitution of a deceased party's personal representative in civil appeals, but makes no provision for substitution in criminal cases. Although Benn's counsel argues that this distinction rises to a constitutional violation, our decision herein does not rest upon M. R. App. P. 25, but upon justiciability principles applicable to all cases, and we therefore need not address the constitutional arguments. The determination that a criminal case is not moot, as discussed above, would be premised upon the identification of concrete interests which survive the defendant. While we cannot anticipate the scope of those interests, in the

8

ordinary course the defendant's personal representative would be authorized to act on the defendant's behalf pursuant to § 72-3-613(22), MCA (a personal representative is authorized to "prosecute or defend claims or proceedings in any jurisdiction for the protection of the estate").

¶14 There are other potential issues which could arise with regard to the legal representation of the personal representative in the appeal, both in the circumstance where counsel had been previously retained by the defendant, and in cases where the Appellate Defender had been previously appointed. *See Carlin*, 249 P.3d at 765. However, those issues have not been raised and briefed here, and we decline to address them. For purposes of this case, we have determined to resolve the merits of the motion to dismiss based upon the arguments made by Defendant's current counsel, and based upon his representations that Defendant's mother has agreed to be appointed personal representative of Defendant's estate.

¶15 Upon these principles, we turn to the question of whether Benn's appeal is moot. Benn's counsel concedes that Issue 3, challenging Benn's lengthy prison sentence and parole eligibility restriction, has been mooted by Benn's death. The restitution condition of Benn's sentence has not been challenged.[1] Benn's counsel seeks review of Issues 1 and 2. However, both Issues 1 and 2 are of the kind that are subject to dismissal as moot, as explained in ¶ 10. Issue 1 challenges Benn's sexual assault conviction and Issue 2 alleges ineffective assistance of counsel. If Benn were to prevail, either issue would contemplate further trial or postconviction proceedings that are now impossible to

---

[1] The State offers that the restitution order was subject to challenge on appeal for failure of the sentence to specify the amount to be paid, but that, as a practical matter, Benn was indigent, restitution is unenforceable and a remand to designate the specific amount would be useless. As this issue was not raised on appeal, we decline to address it further.

undertake, given Benn's death. They are issues which are individual to Benn, for which this Court cannot grant effective relief.

¶16 We agree with the State's argument that Benn's appeal is moot. Therefore,

¶17 IT IS HEREBY ORDERED that the motion to dismiss the appeal is GRANTED. The appeal is dismissed with prejudice.

¶18 The Clerk is directed to mail a true copy hereof to counsel of record herein.

DATED this 14th day of February, 2012.


/S/ JIM RICE

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ MICHAEL E WHEAT