FILED
08/07/2019
Clerk of the
Appellate Courts

# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 6, 2019 Session

## STATE OF TENNESSEE v. HASSAN FALAH AL MUTORY

**Appeal by Permission from the Court of Criminal Appeals
Criminal Court for Davidson County
No. 2015-C-1905     Seth W. Norman, Judge**

_____

### No. M2017-00346-SC-R11-CD

_____

We granted this appeal to determine whether, after the death of a defendant during an appeal as of right from a conviction, the Court of Criminal Appeals should follow our holding in Carver v. State, 398 S.W.2d 719 (Tenn. 1966).  We conclude that, due to changes in Tennessee's public policy in the arena of victims' rights, the doctrine of abatement ab initio must be abandoned.  Because there is no evidence before the Court that any interest would benefit from allowing the deceased defendant's appeal to continue, we hold that, in this case, the deceased defendant's appeal as of right from his conviction should be dismissed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal
Appeals Reversed; Judgment of the Trial Court Reinstated**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and HOLLY KIRBY and ROGER A. PAGE, JJ., joined.  SHARON G. LEE, J., concurring in part and dissenting in part.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumenstein, Solicitor General; and M. Todd Ridley, Assistant Attorney General, for the appellant, State of Tennessee.

Joel W. Crim, Nashville, Tennessee, for the appellee, Hassan Falah Al Mutory.

**OPINION**

**I. Factual and Procedural Background**

In the early hours of the morning on August 31, 2014, while attending a house party in west Nashville, Hassan Falah Al Mutory, the defendant in this case, pulled out a gun and fired it three times. The first two bullets caused no harm, but the third struck another party-goer, Carlos Gomez, in the head. Mr. Gomez died later that day. The defendant was charged with one count of first degree murder.

On September 15, 2016, a jury found the defendant guilty of reckless homicide. On December 7, 2016, the trial court sentenced the defendant to three years of incarceration. He was not required to pay any fees or restitution.

The defendant appealed his conviction, arguing first, that the court erred by admitting a recorded interview at trial and, second, that there was insufficient evidence to find him guilty of reckless homicide. However, before the Court of Criminal Appeals could rule on the matter, on November 1, 2017, the defendant died.

The defendant's attorney then filed a motion asking the Court of Criminal Appeals to apply the doctrine of abatement ab initio, which this Court adopted in Carver v. State, 398 S.W.2d 719 (Tenn. 1966). "'Abatement' is defined as the discontinuance of a legal proceeding 'for a reason unrelated to the merits of the claim.'" State v. Burrell, 837 N.W.2d 459, 462–63 (Minn. 2013) (quoting Black's Law Dictionary 3 (9th ed. 2009)). "'*Ab initio*' means '[f]rom the beginning.'" Id. at 463 (quoting Black's Law Dictionary 5 (9th ed. 2009)). The effect of abatement ab initio "is to stop all proceedings ab initio (from the beginning) and render the defendant as if he or she had never been charged." Timothy A. Razel, Note, Dying to Get Away with It: How the Abatement Doctrine Thwarts Justice & What Should Be Done Instead, 75 Fordham L. Rev. 2193, 2195 (2007). Defense counsel asked the Court of Criminal Appeals to apply the doctrine of abatement ab initio, vacate the defendant's conviction, and dismiss the indictment.

The State opposed the motion and argued that the doctrine of abatement ab initio "no longer fits within Tennessee's jurisprudence" due to an amendment to the Tennessee Constitution that provides victims with certain rights during criminal proceedings. See Tenn. Const. art. I, § 35. The Court of Criminal Appeals rejected the State's argument, pointing out that the Tennessee Constitution does not specifically address the doctrine of abatement ab initio. The Court of Criminal Appeals also opined that "a decision to overturn long-standing Tennessee precedent based upon the weighing of . . . competing policies and interests is best left to the legislature." State v. Mutory, No. M2017-00346-CCA-R3-CD (Tenn. Crim. App. Apr. 19, 2018) (order).

The State then applied for permission to appeal to this Court pursuant to Tennessee Rule of Appellate Procedure 11, arguing that "Tennessee should abandon the rule of abatement ab initio, which effectively voids a defendant's conviction if the defendant dies while a direct appeal is pending" and replace it with "dismissal of the appeal." We granted the State's application.

## II. Standard of Review

The issue in this appeal—whether Tennessee should continue to apply abatement ab initio when a criminal defendant dies during an appeal as of right from a conviction—is a question of law, which we review de novo without a presumption of correctness. Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 836 (Tenn. 2008). The same is true of any issue concerning the scope of appellate review. Peck v. Tanner, 181 S.W.3d 262, 265 (Tenn. 2005). We afford no deference to the legal conclusions of the court below. Creech v. Addington, 281 S.W.3d 363, 372 (Tenn. 2009).

## III. Analysis

The doctrine of abatement ab initio is something of a legal curiosity. The Tennessee Court of Criminal Appeals, which has received and disposed of over a thousand matters every year for the past decade,[1] receives only a few motions to abate ab initio per year. Although the issue arises infrequently, the parameters and continuing viability of the doctrine are now hotly debated around the country. Compare Payton v. State, No. 2016-KA-00378-SCT, 2019 WL 1292182, at *8 (Miss. Mar. 21, 2019) ("[D]eparture from the abatement *ab initio* doctrine is necessary to avoid the perpetuation of pernicious error."), with United States v. Libous, 858 F.3d 64, 68–69 (2d Cir. 2017) (requiring that courts abate appeals ab initio even though the consequences of abatement ab initio "can surely be devastating").

---

[1] Admin. Office of the Courts, Annual Report of the Tennessee Judiciary for Fiscal Year 2017–2018, at 12–13 (2018); Admin. Office of the Courts, Annual Report of the Tennessee Judiciary for Fiscal Year 2016–2017, at 11–12 (2017); Admin. Office of the Courts, Annual Report of the Tennessee Judiciary for Fiscal Year 2015–2016, at 11–12 (2016); Admin. Office of the Courts, Annual Report of the Tennessee Judiciary for Fiscal Year 2014–2015, at 11–12 (2015); Admin. Office of the Courts, Annual Report of the Tennessee Judiciary for Fiscal Year 2013–2014, at 12–13 (2014); Admin. Office of the Courts, Annual Report of the Tennessee Judiciary for Fiscal Year 2012–2013, at 15–16 (2013); Admin. Office of the Courts, Annual Report of the Tennessee Judiciary for Fiscal Year 2011–2012, at 14 (2012); Admin. Office of the Courts, Annual Report of the Tennessee Judiciary for Fiscal Year 2010–2011, at 14 (2011); Admin. Office of the Courts, Annual Report of the Tennessee Judiciary for Fiscal Year 2009–2010, at 14 (2010); Admin. Office of the Courts, Annual Report of the Tennessee Judiciary for Fiscal Year 2008–2009, at 14 (2009).

This debate has risen to the forefront because the doctrine has been applied in a number of high-profile criminal cases where the persons convicted died while their appeals were pending. See Tim E. Staggs, Note, Legacy of a Scandal: How John Geoghan's Death May Serve As an Impetus to Bring Abatement Ab Initio in Line with the Victims' Rights Movement, 38 Ind. L. Rev. 507 (2005) (discussing the abated conviction of a child molester); Eric Levenson & Holly Yan, Aaron Hernandez's Murder Conviction Cleared after Suicide, CNN (May 9, 2017), https://www.cnn.com/2017/05/09/us/aaron-hernandez-murder-conviction-abated/index.html (discussing the abated conviction of a murderer);[2] Shaheen Pasha, U.S., Lay Estate Ink $12M Pension Settlement, CNN: Money (Sept. 7, 2006, 4:15 PM), https://money.cnn.com/2006/09/07/news/newsmakers/lay_enron_claim/index.htm?postversion=2006090716 (discussing the abated conviction of a former Enron chairman). Not surprisingly then, in recent years, courts around the country have been asked to reconsider the doctrine and determine whether the justifications originally supporting its adoption remain valid, particularly in light of other changes in the legal landscape concerning the rights of victims. This appeal provides us with an opportunity for reconsideration as well.

### A. Abatement Ab Initio

Abatement ab initio is a court-made doctrine, but the origin of this doctrine is not entirely clear. Commonwealth v. Hernandez, 118 N.E.3d 107, 111 (Mass. 2019) (noting that there is "little or no evidence of [abatement ab initio] prior to the late nineteenth century." (quoting Bevel v. Commonwealth, 717 S.E.2d 789, 792 (Va. 2011))). One of the earliest cases in the United States to discuss and apply the concept of abatement in a criminal case, O'Sullivan v. People, 32 N.E. 192 (Ill. 1892), *did not* apply the doctrine of abatement ab initio. In O'Sullivan, the defendant died during the pendency of his writ of error, and the defendant's attorneys and his estate asked the appellate court to decide the matter and enter its judgment nunc pro tunc[3] for a date before the defendant died. Id. at 192. The O'Sullivan court refused, stating that "[a] judgment cannot be enforced when the only subject-matter upon which it can operate has ceased to exist." Id. at 193. Before reaching this conclusion, the court observed:

---

[2] Aaron Hernandez's conviction has since been reinstated. See Commonwealth v. Hernandez, 118 N.E.3d 107, 110 (Mass. 2019).

[3] "A judgment entered on a day after the time when it should have been entered . . . ." Judgment Nunc Pro Tunc, Black's Law Dictionary (10th ed. 2014).

> Judgments in civil cases . . . are for the recovery or the denial of something either specifically or in the form of damages of some pecuniary value. . . . But in criminal cases, under indictments for felonies, the sole purpose of the action is not to give the people anything, but to punish the defendant in his person . . . .

Id. at 192. The court then abated the writ of error. Id. at 194. But the court did not abate the conviction.

Following O'Sullivan, many state appellate courts, including this Court, limited abatement to the appeals process only and left intact the convictions of deceased defendants. See, e.g., Wiggins v. State, 289 S.W. 498, 499 (Tenn. 1926) (stating that when a criminal defendant died while his appeal was pending his "case" was "abated"); State v. Martin, 47 P. 196, 196 (Or. 1896) ("In [prior] cases the defendant died after the cause had been submitted to the appellate court for decision, and . . . the courts refus[ed] to proceed any further in the matter or pronounce any decision in the cases. It follows that this appeal must abate, and it is so ordered."); see also Alexander F. Mindlin, Note, "Abatement Means What It Says": The Quiet Recasting of Abatement, 67 N.Y.U. Ann. Surv. Am. L. 195, 207 (2011) ("Traditional courts abated in several different ways, none of which connoted the erasure of the defendant's guilt."). But see Overland Cotton Mill Co. v. People, 75 P. 924, 927 (Colo. 1904) ("As to the deceased, the judgment is abated.").

As time passed, however, courts expanded the doctrine of abatement to include criminal prosecutions from their beginning, or ab initio. See State v. Morris, 328 So. 2d 65, 67 (La. 1976) ("Hence, the appeal in this case is dismissed, the judgment of conviction is vacated, and the case is remanded to the district court with instructions to dismiss the bill of information."); State v. Campbell, 193 N.W.2d 571, 572 (Neb. 1972) (same). Several justifications have been cited in support of this expansion:

> Such abatement is premised on the theory that without it, the defendant would be deprived of his statutory right to review, that the conviction is not final until the time for appeal is exhausted, and that abatement prevents both recovery against the decedent's estate (if there is a fine) and the use of the conviction in civil litigation against the estate. Another justification is that punishment—the purpose of the criminal justice system—is not possible after the defendant dies.

Wayne R. LaFave et al., 7 Criminal Procedure. § 27.5(a) (4th ed. Nov. 2018 update) (footnote omitted) [hereinafter Criminal Procedure].

The impossibility of punishment concern was an especially important motivating factor in the early decisions adopting the doctrine, including this Court's opinion in Carver, which stated:

> One of the cardinal principles and reasons for the existence of criminal law is to punish the guilty for acts contrary to the laws adopted by society. The defendant in this case having died is relieved of all punishment by human hands and the determination of his guilt or innocence is now assumed by the ultimate arbiter of all human affairs.

398 S.W.2d at 720. The Carver Court also relied upon one of the other rationales for the doctrine of abatement ab initio—the importance of an appeal as of right—noting:

> Defendant's right of appeal inhered in the prosecution from the beginning. His right of appeal was as inviolable as any right of defense. Also his right of suspension of the judgment of the trial court until after the appeal had been heard. [sic] The judgment below could not become a verity until the appellate court made it so by an affirmance. If the appeal had been sustained, all the proceedings in the trial below would fall. The question of the defendant's guilt was therefore necessarily undetermined at the time of his death.

Id. (quoting State v. Kriechbaum, 258 N.W. 110, 113 (Iowa 1934)).[4]

Indeed, the expansion of abatement of a criminal appeal into abatement ab initio coincided with the increased availability of appeals as of right and with courts viewing appeals as of right as a continuation and culmination of the criminal proceedings initiated in the trial court. At the time of this nation's founding, the concept of a right to appeal was still in its infancy. See David Rossman, "Were There No Appeal": The History of Review in American Criminal Courts, 81 J. Crim. L. & Criminology 518, 525–26 (1990). States generally did not consider review of a conviction necessary to the preservation of a defendant's rights. Id. at 543–48. But that did not mean that criminal defendants were

---

[4] Tennessee courts have continued to apply the doctrine of abatement ab initio since Carver, although this Court has not had an opportunity since to consider its soundness. See Burton v. Mooneyham, No. M2017-01110-COA-R3-CV, 2018 WL 1377852, at *3 n.5 (Tenn. Ct. App. Mar. 19, 2018); State v. Koulis, No. M2007-02781-CCA-R3-CD (Tenn. Crim. App. May 5, 2010) (order dismissing appeal and abating conviction) (available at https://www2.tncourts.gov/PublicCaseHistory/CaseDetails.aspx?id=24333&Number=True); State v. Quinn, No. 01C019709CC00413, 1998 WL 418030, at *1 (Tenn. Crim. App. July 16, 1998); State v. Hanvy, No. 01C01-9401-CC-00448, 1994 Tenn. Crim. App. Lexis 862 (Tenn. Crim. App. Aug. 11, 1994); State v. Osagiede, No. C-4829, 1984 Tenn. Crim. App. Lexis 2369 (Tenn. Crim. App. Mar. 20, 1984).

left without any sort of review of their convictions. Id. at 538–42. Instead, the states allowed review of criminal convictions because "[r]eview provided a means for ensuring the uniform application of the law." Id. at 549–50. Eventually, states recognized that the right to appeal from a conviction was necessary to the preservation of a defendant's rights, although "[t]he number of cases heard by state appellate courts remained quite small into the 1900s."[5] 7 Criminal Procedure, at § 27.1(a) n.3. The availability and growth of the right to appeal was similarly slow to develop in federal courts. See Carroll v. United States, 354 U.S. 394, 400 (1957) ("Indeed, it was 100 years before the defendant in a criminal case, even a capital case, was afforded appellate review as of right.").

But, as the right to appeal became more common, it became more highly valued. In United States v. Moehlenkamp, 557 F.2d 126, 128 (7th Cir. 1977) (quoting Griffin v. Illinois, 351 U.S. 12, 18 (1956)), when applying the doctrine of abatement ab initio, the Seventh Circuit described appeals as of right as an "integral part of (our) system for finally adjudicating . . . guilt or innocence." Consequently, the Seventh Circuit held that when a criminal defendant dies during an appeal as of right from a conviction "the interests of justice ordinarily require that he not stand convicted" because the defendant has not yet received a final adjudication of guilt. Id.[6]

---

[5] States began to consider providing criminal defendants a right to appeal from their convictions in the mid-1800s. See Cassandra Burke Robertson, The Right to Appeal, 91 N.C. L. Rev. 1219, 1238 (2013). Now, all fifty states provide some form of a right to appeal from a conviction, although Virginia has granted the right only to defendants who have been sentenced to death. See Bundy v. Wilson, 815 F.2d 125, 136–42 (1st Cir. 1987) (listing the various constitutional provisions, statutes, and court-crafted doctrines dealing with the right to appeal in all fifty states as well as Puerto Rico and the District of Columbia); Robertson, supra, at 1281 n.8 (2013) (noting recent developments altering the right to appeal in New Hampshire, West Virginia, and Virginia).

[6] Courts have not typically applied the doctrine of abatement ab initio when a defendant dies during the pendency of a discretionary appeal. Rather, courts distinguish between an appeal as of right to an intermediate appellate court and a discretionary appeal to a jurisdiction's highest appellate court, applying the doctrine only to the former type of appeal and dismissing the latter. See, e.g., People v. Griffin, 328 P.3d 91, 95 (Colo. 2014).

This distinction stems primarily from the Moehlenkamp Court's discussion of two United States Supreme Court cases: Durham v. United States, 401 U.S. 481 (1971), and Dove v. United States, 423 U.S. 325 (1976). The Seventh Circuit interpreted these two cases to stand for the proposition that an appeal as of right from a criminal conviction "brings into play different considerations" than a petition for writ of certiorari because "[t]he Supreme Court may dismiss the petition without prejudicing the rights of a deceased petitioner, for he has already had the benefit of the appellate review of his conviction to which he was entitled of right." Moehlenkamp, 557 F.2d at 127–28. Thus, the Seventh Circuit held that, while a defendant's death during an appeal as of right from a conviction requires abatement of the conviction, a defendant's death during a discretionary appeal requires only dismissal. Id.

Buoyed by the justifications of the impossibility of punishment and the importance of an appeal to the validity of a criminal conviction, the doctrine of abatement ab initio flourished in the United States through the end of the twentieth century.  See United States v. Christopher, 273 F.3d 294, 297 (3d Cir. 2001) ("Thus, the rule followed almost unanimously by the Courts of Appeals is that a conviction abates on the death of the accused before his appeal has been decided."); State v. Korsen, 111 P.3d 130, 134 (Idaho 2005) (referring to the doctrine of abatement ab initio as "the majority rule"); Surland v. State, 895 A.2d 1034, 1036 (Md. 2006) (same).  But, the tide has turned again— currently, twenty-eight states do not apply the doctrine of abatement ab initio.[7]

Two changes to the legal landscape of many states are often cited as the impetus for the move away from the doctrine of abatement ab initio—restitution and a recognition of victims' rights.  Over the past few decades, many states have amended their constitutions and passed laws affording victims various rights during criminal proceedings, including the right to fair and compassionate treatment, the right to be kept informed of the proceeding, and many others.  See Payton, 2019 WL 1292182, at *6–9 (collecting cases).  States have also passed laws providing that convicted defendants can be required to pay restitution to their victims.  See Lorraine Slavin & David J. Sorin, Congress Opens A Pandora's Box—the Restitution Provisions of the Victim and Witness Protection Act of 1982, 52 Fordham L. Rev. 507, 573 n.194 (1984) (collecting statutes).

---

[7] See Ariz. Rev. Stat. Ann. § 13-106 (West, Westlaw current through April 22, 2019); Wheat v. State, 907 So. 2d 461, 462 (Ala. 2005); State v. Carlin, 249 P.3d 752, 762–63 (Alaska 2011); State v. Reed, 435 P.3d 1044, 1048 (Ariz. Ct. App. 2019); Perez v. State, 2016 Ark. 298, at 1, 2016 WL 4703478, at *1 (2016); State v. Trantolo, 549 A.2d 1074, 1074 (Conn. 1988); Perry v. State, 575 A.2d 1154, 1156 (Del. 1990); State v. Clements, 668 So. 2d 980, 982 (Fla. 1996); State v. Dodelin, 319 S.E.2d 911, 911 (Ga. Ct. App. 1984); State v. Makaila, 897 P.2d 967, 973 (Haw. 1995); Korsen, 111 P.3d at 135; Whitehouse v. State, 364 N.E.2d 1015, 1016 (Ind. 1977); State v. Hollister, 329 P.3d 1220, 1222 (Kan. 2014); Royce v. Commonwealth, 577 S.W.2d 615, 616 (Ky. 1979); Surland, 895 A.2d at 1045; Hernandez, 118 N.E.3d at 122; People v. Peters, 537 N.W.2d 160, 163–64 (Mich. 1995); Payton, 2019 WL 1292182, at *10; State v. Benn, 274 P.3d 47, 51–52 (Mont. 2012); Brass v. State, 325 P.3d 1256, 1258–59 (Nev. 2014); State v. Gartland, 694 A.2d 564, 568–69 (N.J. 1997); State v. Salazar, 945 P.2d 996, 1013 (N.M. 1997); Commonwealth v. Beaudoin, 182 A.3d 1009, 1010 (Pa. Super. Ct. 2018); State v. Bixby, 723 S.E.2d 841, 841 (S.C. Ct. App. 2011); State v. Christensen, 866 P.2d 533, 536–37 (Utah 1993); Bevel, 717 S.E.2d at 795–96; State v. Webb, 219 P.3d 695, 699 (Wash. 2009); State v. McDonald, 424 N.W.2d 411, 414 (Wis. 1988); see also State v. McGettrick, 509 N.E.2d 378, 382–83 (Ohio 1987) (requiring appellate courts to allow an appeal to continue upon motion from the decedent's representative or the state, but providing that in the absence of such a motion, appellate courts have the discretion to vacate the conviction).

The same is true of Tennessee. Mirroring the transformation of victims' rights laws that has "taken place throughout the country," State v. Carlin, 249 P.3d 752, 758 (Alaska 2011), in 1990, Tennessee passed the Victims' Bill of Rights, Tenn. Code Ann. §§ 40-38-101 to 40-38-117 (2014 & Supp. 2018). This and other provisions of Tennessee law endow victims with a variety of rights. Tennessee law requires that victims "[b]e treated with dignity and compassion." Tenn. Code Ann. § 40-38-102(a)(1). It protects a victim's right to restitution by providing that "[i]n addition to the punishment . . . the person committing the offense may be sentenced by the court to pay restitution to the victim or victims of the offense." Tenn. Code Ann. § 39-11-118(a) (2018); see also Tenn. Code Ann. § 40-38-106 (providing a right to restitution for victims of crimes against their property). It reassures victims that they "shall be able to expect that the operation of the criminal justice system will not be unnecessarily delayed and that they will be able to return to normal lives as soon as possible." Tenn. Code Ann. § 40-38-105(a).

In addition to these statutes, the Tennessee Constitution was amended in 1998 "[t]o preserve and protect the rights of victims of crime to justice and due process." Tenn. Const. art. I, § 35. This new constitutional provision set out eight rights for victims, including the right to "a prompt and final conclusion of the case after the conviction or sentence" and the "right to restitution from the offender." Id.

A recent decision from this Court, Bowen ex rel. Doe v. Arnold, 502 S.W.3d 102 (Tenn. 2016), provides victims with further protection. In Bowen, we adopted "both offensive and defensive collateral estoppel." Id. at 115. This means that, in many circumstances, a victim can rely upon the judgment in a criminal case when bringing a civil action against the person who was convicted of the crime and, thereby, avoid re-litigating issues already resolved in the criminal trial. Id. at 116–18.

As many courts in other states have recognized, these changes in the arena of victims' rights are incongruent with the doctrine of abatement ab initio because abating a defendant's conviction can have a detrimental impact on victims both emotionally and financially. See Wheat v. State, 907 So. 2d 461, 463 (Ala. 2005) (noting that abatement ab initio has a "callous impact . . . on the surviving victims of violent crime" (quoting People v. Robinson, 699 N.E.2d 1086, 1091 (Ill. App. Ct. 1998), vacated, 719 N.E.2d 662 (Ill. 1999))); Korsen, 111 P.3d at 133–35 (holding that changes in the state's law emphasizing victims' rights meant that a conviction should not be abated if a criminal defendant dies with a pending appeal); State v. Benn, 274 P.3d 47, 51 (Mont. 2012) ("[A] restitution condition imposed within a criminal judgment may be enforceable by victims against the defendant's estate.").[8]

---

[8] So serious is the harm that abatement causes to a victim's right to restitution that even some courts applying abatement ab initio carve out an exception for restitution and require its payment despite

- 9 -

The State argues that the doctrine of abatement ab initio is in tension with the aforementioned changes to Tennessee law and policy and asks us to join with the many other states that have abandoned it. Because abandoning the doctrine of abatement ab initio as the State requests would require us to overturn precedent, we give the matter careful consideration. See Rye v. Women's Care Ctr. of Memphis, MPLLC, 477 S.W.3d 235, 262 (Tenn. 2015). "Confidence in our courts is to a great extent dependent on the uniformity and consistency engendered by allegiance to *stare decisis*." Hanover v. Ruch, 809 S.W.2d 893, 898 (Tenn. 1991) (quoting Davis v. Davis, 657 S.W.2d 753, 758 (Tenn. 1983)). But that does not mean we are bound to unquestioningly follow all precedent:

> "[M]indless obedience to this precept can confound the truth and foster an attitude of contempt." As a live and breathing thing, the law changes when necessary to serve the needs of the people. When this basic purpose of the law is slighted or overlooked, then it loses a high degree of its majesty.

Id. (quoting Davis, 657 S.W.2d at 758). Thus, generally, we will overturn precedent only "when there is an error in the precedent, when the precedent is obsolete, when adhering to the precedent would cause greater harm to the community than disregarding stare decisis, or when the prior precedent conflicts with a constitutional provision." Cooper v. Logistics Insight Corp., 395 S.W.3d 632, 639 (Tenn. 2013).

Additionally, this appeal involves a common law procedural rule, United States v. Estate of Parsons, 367 F.3d 409, 414 (5th Cir. 2004) ("[T]he doctrine of abatement *ab initio* is largely court-created and a creature of the common law . . . ."), and "'[c]onsiderations in favor of *stare decisis*' are at their weakest in cases 'involving procedural and evidentiary rules,'" Scott v. Harris, 550 U.S. 372, 388 (2007) (Breyer, J., concurring) (quoting Payne v. Tennessee, 501 U.S. 808, 828 (1991)).

We conclude that the doctrine of abatement ab initio must be abandoned because it is obsolete, its continued application would do more harm than good, and it is inconsistent with the current public policy of this State, as reflected in the constitution, in statutes, and in recent judicial decisions. Changes to Tennessee law in the arena of victims' rights have expanded the purpose of the criminal justice system well beyond the "cardinal principle[]" of "punishment." Carver, 398 S.W.2d at 720. Furthermore, abatement ab initio prioritizes the reputation of a deceased criminal and the financial interests of the criminal's estate over society's interest in the just condemnation of a

---

the abatement of the conviction. Christopher, 273 F.3d at 299; People v. Daly, 313 P.3d 571, 577 (Colo. Ct. App. 2011). Contra United States v. Ajrawat, 738 F. App'x 136, 139 (4th Cir. 2018) (holding that even orders of restitution must be abated due to the determination in Nelson v. Colorado, 137 S. Ct. 1249, 1252 (2017), that "[w]hen a criminal conviction is *invalidated* by a reviewing court and no retrial will occur, . . . the State [is] obliged to refund fees, court costs, *and restitution exacted from the defendant upon, and as a consequence of, the conviction.*").

criminal act and a victim's right to restitution. Its application would deprive victims of the benefit of our holding in Bowen by forcing them to re-litigate matters in civil law suits that were already resolved during deceased defendants' criminal trials. We can no longer countenance a doctrine that causes so much harm to the living for the sake of the dead. Thus, we abandon the doctrine of abatement ab initio and expressly overrule our decision in Carver v. State and any other prior decisions to the extent they conflict with this holding by recognizing and applying the doctrine of abatement ab initio.

## B. Separation of Powers

The Court of Criminal Appeals raised a concern that such a holding in this case might appear to intrude on the legislature's purview. It is true that this Court is "not free to establish what its members believe to be the best policy for the State; rather, we must determine where public policy is to be found, what the specific public policy is, and how it is applicable to the case at hand." Smith v. Gore, 728 S.W.2d 738, 746 (Tenn. 1987). However, when deciding whether to abandon the doctrine of abatement ab initio, we are not creating new public policy. Instead, we are determining whether an old, court-made doctrine conflicts with the public policy now set out in Tennessee's "constitution, statutes, judicial decisions and applicable rules of common law." Id. at 747 (quoting State ex rel. Swann v. Pack, 527 S.W.2d 99, 112 n.17 (Tenn. 1975)). "We have 'not hesitated to abolish obsolete common-law doctrines,' and indeed have 'a special duty to do so where it is the Court, rather than the Legislature, which has recognized and nurtured' the common law rule." State v. King, 40 S.W.3d 442, 447–48 (Tenn. 2001) (quoting State v. Rogers, 992 S.W.2d 393, 400 (Tenn. 1999)). Thus, our abandonment of abatement ab initio does not place this Court "in usurpation of the powers of the legislature." Smith, 728 S.W.2d at 747 (quoting Cavender v. Hewitt, 239 S.W. 767, 768 (Tenn. 1922)).

## C. The Dismissal and Substitution Approaches

We must now determine the appropriate resolution of this appeal in light of our abrogation of abatement ab initio. The State encourages us to adopt a straightforward "dismiss as moot" approach that would require the dismissal of every criminal appeal from a conviction upon the death of the defendant, regardless of whether the defendant or the State brought the appeal. Although defense counsel did not address the issue in his briefs, at oral argument he asserted that a representative of a deceased defendant should be allowed to stand in as a substitute and proceed with an appeal in every case.

The states that have decided to abandon the doctrine of abatement ab initio differ greatly in the approaches they have chosen to replace it—"there being, depending on how granular[ly] one chooses to define the categories, anywhere from three to seven different approaches followed when a defendant dies during the pendency of a direct appeal of a conviction." Hernandez, 118 N.E.3d at 113–14 (collecting cases). Six automatically

dismiss appeals as moot,[9] sixteen allow substitution so that the appeals can continue in some fashion after defendants die,[10] and courts in six other states addressing the issue have dismissed appeals as moot while also indicating that in certain circumstances they might allow appeals to continue.[11]

## 1. Dismissal

States that have opted to dismiss appeals as of right from convictions after defendants die typically have done so for reasons of jurisdiction and mootness. Regarding the first consideration, a number of state courts reason that jurisdiction of a criminal appeal ends upon a defendant's death. For instance, in Delaware, a statute provides that causes of action based upon penal statutes do not survive the death of the appellant, Del. Code Ann. tit. 10, § 3701, and Delaware courts have determined that this statute deprives them of jurisdiction if a defendant dies during an appeal as of right from a conviction. See Perry v. State, 575 A.2d 1154, 1156 (Del. 1990). Massachusetts has a Rule of Appellate Procedure that provides for substitution when a party dies during the pendency of an appeal, but this rule applies only in civil cases, Mass. R. App. P. 30, and the Supreme Judicial Court of Massachusetts has cited this limitation on the substitution rule as one reason for its refusal to allow an appeal to continue after a defendant dies. See Hernandez, 118 N.E.3d at 122. Courts in Idaho and South Carolina have also indicated that their rules of appellate procedure allowing substitution when a party dies during an appeal are limited to civil cases and cannot generally serve as a basis for exercising jurisdiction over a criminal appeal after a defendant dies, Korsen, 111 P.3d at 132; State v. Anderson, 314 S.E.2d 597, 597 (S.C. 1984). But the Supreme Court of Idaho has suggested that it might allow an appeal to continue if it challenges a restitution order, Korsen, 111 P.3d at 133. In Arizona, a statute requires courts to dismiss any pending appeal upon the death of a criminal defendant, Ariz. Rev. Stat. Ann. § 13-106,

---

[9] Wheat, 907 So. 2d at 464; Perry, 575 A.2d at 1156; Dodelin, 319 S.E.2d at 911; Merket v. State, 935 N.E.2d 316, 316 (Ind. Ct. App. 2010); Hernandez, 118 N.E.3d at 121; Bixby, 723 S.E.2d at 841.

[10] Ark. R. App. P. Crim. 1(c); Carlin, 249 P.3d at 762–63; Perez, 2016 Ark. at 1; Dorsey v. State, 868 So. 2d 1192, 1194 n.2 (Fla. 2003); State v. Pickens, 388 P.3d 901, 901 (Haw. Ct. App. 2016); State v. Belt, 381 P.3d 473, 475 (Kan. 2016); Surland, 895 A.2d at 1044–45; Payton, 2019 WL 1292182, at *10; Benn, 274 P.3d at 51; Brass, 325 P.3d at 1258; State v. Cassidy, 197 A.3d 86, 91 (N.J. 2018); Salazar, 945 P.2d at 1003–04; State v. Bradley, 2018-Ohio-631, 2018 WL 986267, at *1 (Ohio Ct. App. 11th Dist. Trumbull County 2018); Beaudoin, 182 A.3d at 1010; Christensen, 866 P.2d at 535–37; State v. Devlin, 267 P.3d 369, 375 (Wash. App. Ct. 2011); State v. Lao Jin, No. 2015AP224-CRNM, 2016 WL 8653204, at *1 (Wis. Ct. App. Nov. 16, 2016).

[11] Reed, 435 P.3d at 1051; Trantolo, 549 A.2d at 1074; Korsen, 111 P.3d at 132–33; Royce, 577 S.W.2d at 616; Peters, 537 N.W.2d at 164; Bevel, 717 S.E.2d at 795–96.

although again, at least one appellate court in Arizona has suggested that it may still have authority to hear appeals for relief from restitution orders brought by a deceased defendant's heirs, Reed, 435 P.3d at 1051.

Regarding mootness, courts in Connecticut, Georgia, Indiana, Kentucky, Massachusetts, and Michigan have dismissed appeals after explaining that resolving appeals on the merits after defendants have died cannot afford practical relief to the parties. State v. Trantolo, 549 A.2d 1074, 1074 (Conn. 1988); State v. Dodelin, 319 S.E.2d 911, 911 (Ga. Ct. App. 1984); Whitehouse v. State, 364 N.E.2d 1015, 1016 (Ind. 1977); Royce v. Com., 577 S.W.2d 615, 616 (Ky. 1979); Hernandez, 118 N.E.3d at 122–23; People v. Peters, 537 N.W.2d 160, 164 (Mich. 1995).

The courts that require dismissal of appeals in all cases often cite the lack of specific constitutional or statutory authority to proceed:

> We do not see that the dismissal of the appeal, without more, denies any rights granted or protected by the statutes or the constitutional provisions. Such rights were personal to and exclusively those of the defendant. Although a criminal conviction carries a definite "fall-out" that extends beyond the person of the defendant, we are aware of no right to be free of such, even if such conviction be erroneous. I may no more appeal my brother's conviction than I may enter his guilty plea.

Whitehouse, 364 N.E.2d at 1016, quoted with approval in Hernandez, 118 N.E.3d at 123. These courts do not consider the collateral consequences that dismissal of the appeal will cause for victims, heirs, creditors, and other third parties because such consequences "could not have been a factor for consideration in the trial proceedings and could not have been a factor in the appeal, had it been concluded." Whitehouse, 364 N.E.2d at 1016, quoted with approval in Hernandez, 118 N.E.3d at 123.

*2. Allowing the Appeal*

States that allow appeals to continue do so after weighing issues such as jurisdiction, mootness, and the important role that the right to appeal plays in ensuring the just outcome of a criminal case. These states have concluded, for various reasons, that jurisdiction does not end when defendants die. In New Jersey, a rule grants any person "aggrieved" by a variety of court actions and outcomes in a criminal case, including an appeal as of right from a conviction, the right to appeal or to seek leave to appeal. N.J. R.A.R 2:3-2. Arkansas has a rule that explicitly provides for substitution in criminal appeals after a defendant has died. Ark. R. App. P. Crim. 1(c). Alaska, Hawaii, Mississippi, Nevada, New Mexico, Ohio, and Pennsylvania all have rules of appellate procedure allowing substitution that resemble their rules of civil procedure allowing substitution. However, unlike courts in Idaho and South Carolina, courts in these states

have determined that their substitution rules of appellate procedure apply to criminal appeals and afford appellate courts jurisdiction even after defendants die during the pendency of appeals as of right from convictions. Carlin, 249 P.3d at 763; State v. Makaila, 897 P.2d 967, 972 (Haw. 1995); Gollott v. State, 646 So. 2d 1297, 1304 (Miss. 1994), overruled in part on other grounds by Payton, 2019 WL 1292182; Brass v. State, 325 P.3d 1256, 1258 (Nev. 2014); State v. Salazar, 945 P.2d 996, 1003 (N.M. 1997); State v. McGettrick, 509 N.E.2d 378, 381 & n.5 (Ohio 1987); Commonwealth v. Beaudoin, 182 A.3d 1009, 1010 (Pa. Super. Ct. 2018); see also State v. Webb, 219 P.3d 695, 699 (Wash. 2009) (noting that its rule governing substitution in appellate procedures "plainly is broad enough to encompass a criminal appeal").[12] Some courts that do not automatically dismiss appeals permit either a personal representative of a deceased defendant or the State to move for an appeal to continue. See State v. Clements, 668 So. 2d 980, 982 (Fla. 1996) ("Likewise, the State may have an interest in seeing the appeal completed. Accordingly, we find that when a defendant dies after judgment but during an appeal, the appellate court may, upon a showing of good cause by the State or a representative of the defendant, determine that the appeal should proceed."); Makaila, 897 P.2d at 972; Salazar, 945 P.2d at 1003; McGettrick, 509 N.E.2d at 381.

As for the issue of mootness, many of these courts do not consider the defendants' deaths to have mooted certain issues raised in the appeal or, alternatively, some of these courts find the appeals moot but hold that, for various reasons, the appeals should continue. As the Supreme Court of Mississippi has explained:

> Upon the death of a defendant pending appeal, it is no more reasonable to deem the appeal moot and let the conviction stand, acting as though we have heard the appellant's arguments and found them meritless, than it is to automatically follow the abatement *ab initio* rule and pretend the defendant was never indicted, tried and found guilty.

Gollott, 646 So. 2d at 1303–04, overruled in part on other grounds by Payton, 2019 WL 1292182.

---

[12] Even federal courts that continue to abate appeals ab initio interpret their relevant rule of appellate procedure, Fed. R. App. P. 43, to allow substitution in criminal appeals after the death of a defendant. See United States v. Ajrawat, 738 F. App'x 136, 138 (4th Cir. 2018); Libous, 858 F.3d at 65 n.1; United States v. Chin, 848 F.2d 55, 57 (4th Cir. 1988); see also Wetzel v. Ohio, 371 U.S. 62, 62 (1962) (allowing the wife to substitute in the appeal of a deceased criminal defendant but making no mention of Rule 43).

These courts tend to treat appeals involving fines and restitution as viable even after defendants die. See Carlin, 249 P.3d at 764 ("Often, there will be a financial component, such as restitution, to a criminal judgment, and the appeal will thus have financial consequences for the defendant's estate."); Benn, 274 P.3d at 51 ("A challenge on appeal to the amount of restitution ordered by the sentence, for example, may remain a viable and concrete issue for which this Court would be able to grant effective relief between the parties."); State v. Christensen, 866 P.2d 533, 537 (Utah 1993)); cf. Renwick v. State, 933 So. 2d 730, 731 (Fla. Dist. Ct. App. 2006) (dismissing an appeal because, among other reasons, "the court did not impose a fine as part of the sentence, and the state has represented that it will not file a claim for court costs against the indigent defendant's estate"); State v. Pickens, 388 P.3d 901, 901 (Haw. Ct. App. 2016) (same).[13]

Other common reasons courts give for allowing these appeals to continue are the collateral consequences to victims, society, and defendants' families that result from dismissing appeals without regard to claims of error. See Carlin, 249 P.3d at 764 (noting that "[e]ven without monetary consequences, the appeal is not necessarily moot" because "[t]he interests of the victim and the community's interest in condemning the offender persist even after the defendant's death" and "[t]he appeal has important consequences for the defendant's reputation and estate"); State v. Hollister, 329 P.3d 1220, 1226 (Kan. 2014) ("[T]he 'state and the defendant (not to mention his family) have endured the strain, the tribulation and the expense of trial and appeal' and have an interest in the final determination of a criminal case. Additionally, a 'right to inherit, or to take by will or otherwise, may be affected.'" (quoting State v. Jones, 551 P.2d 801, 804 (Kan. 1976))); Gollott, 646 So. 2d at 1304 ("This rule also protects society, third parties, and the decedent's estate from being subjected to the force of a hollow conviction—one that remains a presumption for having not been fully adjudicated."), overruled in part on other grounds by Payton, 2019 WL 1292182; Brass, 325 P.3d at 1258 ("[A] challenge to the regularity of Nevada's criminal process presents a live controversy regardless of the appellant's status because, as stated in Commonwealth v. Walker, 288 A.2d 741 (Pa. 1972), society has an interest in the constitutionality of the criminal process."); State v. Gartland, 694 A.2d 564, 569 (N. J. 1997) ("[I]mportant interests of the defendant or society at large may be at stake if an erroneous conviction is left standing."); McGettrick, 509 N.E.2d at 381 ("It is in the interest of the defendant, the defendant's estate and society that any challenge initiated by a defendant to the regularity of a criminal proceeding be fully reviewed and decided by the appellate process." (footnote omitted)); State v. McDonald, 424 N.W.2d 411, 414 (Wis. 1988) ("Moreover, because collateral proceedings may be affected by criminal proceedings in which it is alleged that an

---

[13] As we mentioned previously, restitution is of such importance that even some courts applying abatement ab initio allow victims to pursue restitution. Christopher, 273 F.3d at 299; Daly, 313 P.3d at 577.

individual took the life of another, it is in the interest of society to have a complete review of the merits of the criminal proceedings.").

Several states allow appeals to continue even if a defendant's death has mooted the appeal because of other considerations raised in the appeal. For example, courts will allow the appeal to continue if it deals with "an important issue that is likely to recur," Dorsey v. State, 868 So. 2d 1192, 1194 n.2 (Fla. 2003); Hollister, 329 P.3d at 1227; Gartland, 694 A.2d at 568, if it alleges a "fundamental miscarriage of justice," Gartland, 694 A.2d at 569, or if it raises "an issue . . . of statewide interest and of the nature that public policy demands a decision, such as those issues that would exonerate the defendant," Hollister, 329 P.3d at 1227. Some courts take a different tack and deem an appeal not moot if these issues are present. Desai ex rel. Desai v. State, 398 P.3d 889, 891 n.3 (Nev. 2017); Beaudoin, 182 A.3d at 1010.

Finally, state courts have allowed appeals as of right from a conviction to continue because they find the right to appeal is far too valuable to be lost at death. See Carlin, 249 P.3d at 762 ("[R]elying on the presumption of guilt after conviction to leave the conviction intact is contrary to the defendant's right to appeal."); Surland, 895 A.2d at 1045; Gollott, 646 So. 2d at 1304 ("Full review is the only way to preserve the presumption that the conviction is valid until overturned on appeal, while simultaneously preserving the vested right of the criminal defendant to his appeal."), overruled in part on other grounds by Payton, 2019 WL 1292182; McDonald, 424 N.W.2d at 414 ("This right to an appeal . . . is an integral part of a defendant's right to a final determination of the merits of the case. It serves as a safeguard to protect a defendant against errors in the criminal proceedings. A defendant who dies pending appeal, irrespective of the cause of death, is no less entitled to those safeguards.").[14]

### 3. Tennessee's Approach

Neither party before this Court has advanced any interest—be it an interest of the defendant's family, the victim's family, or society—that would benefit from allowing this appeal to continue. As was previously noted, the defendant was not fined or ordered to pay restitution. Nor have we received any notice of a pending wrongful death action against the defendant or any probate matter related to this case. Neither the defendant's attorney nor the State has raised post-judgment "facts, capable of ready demonstration,

---

[14] Even Massachusetts and Alabama, states that have chosen the dismissal approach, acknowledge the extra layer of validity that appeals provide to convictions by requiring that courts include in the records of an appeal dismissed after a defendant dies "a notation stating that the fact of the defendant's conviction removed the presumption of the defendant's innocence, but that the conviction was appealed and it was neither affirmed nor reversed on appeal." Wheat, 907 So. 2d at 464; Hernandez, N.E.3d at 121 (same).

affecting the positions of the parties or the subject matter of the action." Tenn. R. App. P. 14. On the record before us, we conclude the proper resolution of this appeal is dismissal.[15]

We do not by this decision foreclose the possibility that a future appeal may present circumstances that would warrant its continuation after a defendant's death. We simply leave those matters to another case in which such circumstances are presented and raised. We ask the Advisory Commission on the Rules of Practice and Procedure to review this opinion and to recommend any changes to the Rules of Appellate Procedure it deems advisable regarding the procedure the Court of Criminal Appeals should utilize when a criminal defendant dies during an appeal as of right from a conviction. We prefer to allow the Rules Commission to consider this issue anew, with input from the various stakeholders, and not constrain its consideration by our adoption of an interim procedure. In the meantime, when faced with this issue, the Court of Criminal Appeals should decide on a case-by-case basis, in light of the record on appeal, and after consideration of the wealth of authorities from other jurisdictions, whether a particular appeal as of right should continue after a defendant's death. A party dissatisfied with the intermediate appellate court's decision remains free, of course, to seek review in this Court.

---

[15] The State opposed defense counsel's motion to abate in the Court of Criminal Appeals, arguing that the doctrine should be abolished. When the intermediate appellate court disagreed, the State filed an application for permission to appeal in this Court, and in it asserted that the doctrine should be abolished and the appeal dismissed as moot. Nothing prevented defense counsel from researching the approaches other states had taken to abatement ab initio and opposing dismissal in favor of another approach in his brief. Nothing prevented defense counsel from filing a motion to consider post-judgment facts, pursuant to Tennessee Rule of Appellate Procedure 14, to advise this Court of any currently existing circumstances in this case that have been viewed by courts in other jurisdictions as a sufficient basis for continuing an appeal after a defendant's death. Finally, even after this opinion is released, nothing prevents defense counsel from filing a petition to rehear, pursuant to Tennessee Rule of Appellate Procedure 39, along with a motion to consider post-judgment facts, and bringing to this Court's attention any currently existing circumstances that other courts have viewed as sufficient to warrant continuation of an appeal after a defendant's death. At this time, however, the record is devoid of any interest—be it an interest of the defendant's family, the victim's family, or society—that would benefit from allowing this appeal to continue. Our review and decision are circumscribed by and based upon the record on appeal. State v. Bobadilla, 181 S.W.3d 641, 643 (Tenn. 2005) ("What is in the record sets the boundaries for what the appellate courts may review, and thus only evidence contained therein can be considered." (citing State v. Miller, 737 S.W.2d 556, 558 (Tenn. Crim. App. 1987), perm. app. denied, (Tenn. 1987))). Our application of this bedrock principle is neither novel nor unjust.

## IV. Conclusion

For the reasons stated herein, we overrule the judgment of the Court of Criminal Appeals abating the defendant's conviction, dismiss the appeal, and reinstate the judgment of the trial court. Costs of this appeal are taxed to the State of Tennessee for which execution may issue if necessary.

_____
CORNELIA A. CLARK, JUSTICE